## Raymond and another v. Holmes.

It has been the uniform decision of this Court, that suit may be instituted in the county of the residence of any one of the defendants, and the others be brought in by branch citations, to the counties of their respective residences. A plaintiff, however, would not be permitted to abuse the privilege, by a fictitious indorsement, for the purpose of enabling him to bring the real parties out of the county of their residence.

The protest of a foreign bill of exchange is to be made at the time, in the manner and by the persons prescribed in the place where the bill is payable; but, as to the necessity of making a demand and protest, and the circumstances under which notice may be required or dispensed with, these are incidents of the original contract, which are governed by the laws of the place where the bill was drawn. They constitute implied conditions upon which the liability of the drawer is to attach, according to the *lex loci contractus;* and if the bill is negotiated, the like responsibility attaches upon each successive indorsement, according to the law of the place of the indorsement.

The Act of March 20th, 1848, prescribing the mode of establishing the liabilities of

drawers and indorsers of bills of exchange and promissory notes, applies to bills of exchange drawn, and indorsements thereof, in this State, payable in another State or country, except as to the time, manner and person by whom, the protest, if any, is to be made; and the liability of such drawer or indorser may be fixed by suit to the first Term of the Court, &c., as in case of an inland bill.

Appeal from Bastrop. This suit was brought on a bill of exchange, drawn by Raymond & Grooms on J. D. Fuller & Co., New Orleans, Louisiana, in favor of Chancy Johnson, at ten days sight, and indorsed by Johnson to the appellee, Holmes. It was protested for non-acceptance and non-payment. Suit was brought in Bastrop county, within which county Johnson resided, against Johnson and the appellants, who were residents of the county of Travis, in a joint action. The petition contained no averments of the protest and notice; but the action was brought to the first Term of the Court, after the cause of action accrued. The appellants demurred and excepted to the jurisdiction of the District Court of Bastrop county, on the ground, that they were not liable to be sued in that county, it not being the county of their residence. The demurrer and exceptions were overruled. The appellants asked the Court to instruct the jury, that, unless notice of the protest was proven, the plaintiff was not entitled to recover; which was refused. There was a verdict and judgment for the plaintiff; and Raymond & Grooms appealed. The overruling the exceptions, and the refusal to give the charge prayed, were assigned for error.

*T. H. Duval*, for appellants. I. We contend that the plea to the jurisdiction of the Court, filed by the defendants Raymond & Grooms, ought to have been sustained. By the Act of May 13th, 1846, (Hart. Dig. p. 241,) it is enacted, " That " no person who is an inhabitant of this State, shall be sued " out of the county where he has his domicil, except in the " following cases, viz : " (here the statute goes on to enumerate the cases excepted out of the general rule, but in none of them is the case of the present defendants included.)

Now the rule laid down in this, the 1st Section of the statute, being a general one, must control, unless it be expressly or impliedly repealed by some subsequent provision of law. It will be contended that such a repeal, or additional exception to the general rule, will be found in the 46th Section of the same statute. (See Hart. Dig. p. 247.) The language of this Section, so far as it is applicable to the case now before the Court, is, that, " The principle and the indorser or surety " upon any instrument in writing, may be joined in the same " suit," &c. One rule for construing a law, applicable to this case is, that effect shall be given to the whole law, if possible. That one portion of a law shall not be repealed or rendered inoperative, by another, unless the latter so directly conflicts with the former that they cannot stand together. (See 1 Bl. Com. 62.) The question then is, Cannot the 1st and 46th Sections of the Act in question, be so construed as to give due effect to both within the meaning of the Legislature ? We say they can. In saying, that " the principal and indorser " upon any instrument in writing might be joined in the same " suit," &c., the law clearly intended that they should both be residents of the same county. This construction of the 46th Section entirely reconciles it with the general rule established by the 1st Section, securing to every citizen of the State, that exemption from suit, out of the county of his domicil, which was intended by the latter, except in the special cases therein expressed.

II. Again, the refusal of the Court to give the instruction asked for by the defendants was clearly erroneous. The defendants were entitled to notice of the dishonor of the draft upon which they were sued as drawers ; and no judgment could be legally rendered against them, without proof that such notice had been given in accordance with the rules of the law merchant, as adopted and acted upon in the State of Louisiana. The draft in question was drawn by citizens of the State of Texas upon citizens of the State of Louisiana, and was payable in the latter. It was a foreign bill of exchange. (See

Story on Bills.)    Now, although this was a foreign bill, and the drawers were entitled to notice of its dishonor, under the general law merchant, as well as the law of Louisiana, it will doubtless be contended that such notice was dispensed with in this case, by the 3rd Section of the Act of March 20th, 1848. We contend that this Act was only intended to apply to such bills of exchange, &c., as were drawn by one citizen of Texas upon another, and made payable in this State.    It does not include, or have any reference to, bills drawn by a citizen of this State, upon a citizen of another State, and payable in the latter.    This is evident from the 4th and 5th Sections of the Act, which in specifying how, by whom, &c., the bills referred to in the previous part of the Act, shall be protested, &c., require it to be done by "some Notary Public of any county." By this was meant a Notary Public of some county of this State, which shows that the whole Act only had reference to such bills and notes as were drawn by one citizen of the State upon another, in other words, such as were inland bills.

The responsibility, then, of the drawers of this draft, must be fixed at the time, in the manner, and by the persons, prescribed in the place where the same is made payable, to wit: in the State of Louisiana.    (See Story's Conflict of Laws, p. 298.)    This is the Common Law rule.

In Chitty on Bills, page 490, it is said, "with respect to "the protest, it should always be made according to the law "of the place where the payment ought to have been made, "though with regard to the notice of the dishonor, it must "be given to the drawer, within the time and according to the "law of the place where the bill was drawn."

In conclusion we say, that this being a foreign bill, the law of the place of its payment is to govern.    Our statute of 1848 has nothing to do with it.    The bill should have been protested, therefore, and notice given to the drawers according to the law merchant, and due proof made of the same on the trial.    (Story's Conflict of Laws, 298, 524; Thrasher v. Everhart, 3 Gill & Johns. R. 234, 242; Boyden v. Taylor, 2 Harr.

7

& Johns. R. 396; Story on Contracts, p. 691 and 654, and cases there cited.)

*F. W. & J. W. Chandler*, for appellee. I. In disposing of the first assignment of error, it is only necessary to refer to Hart. Dig. Art. 667.

The second assignment relates to the instruction asked by the appellants' counsel and refused by the Court. Our statute has changed the law merchant in this respect. (See Hart. Dig. Art. 2528.) Notice is not necessary. Suit to the first Court is substituted. The only thing necessary to prove is non-payment.

LIPSCOMB, J. On the first point, it is only necessary to say, that it has been the uniform decision of this Court, that suit may be instituted in the county of the residence of any one of the defendants, and the others be brought in by branch citations, to the counties of their respective residences. A plaintiff, however, would not be permitted to abuse the privilege, by a fictitious indorsement, for the purpose of enabling him to bring the real parties, for trial, out of their own county of residence. (Pool v. Pickett, 8 Tex. R. 122.)

The second assignment presents a graver question: it is whether the law of the place where the bill is payable, or that of the place where the bill was drawn or indorsed, is to govern, and fix the liability of such drawer or indorser. If the former, by the law merchant, notice of protest would have to be proven, to authorize a recovery against the drawers in this case; but if the latter, then, no notice of protest would be necessary to fix the liability, as the suit was brought to the first Term of the Court after the accrual of the liability. (Hart. Dig. Art. 2528.) On this question, there has been some diversity of opinion. On general principles, it would seem that the law of the place drawn upon, should control, as it is a well established rule of law, that when a particular place has

been named for the performance of the contract, the law of such place must govern. And such is the rule of decision in England, as to the liability of drawers and indorsers. (1 Adolphus & Ellis, New Rep. 40.) A different rule is believed to prevail in all the American Courts. Mr. Justice Story, in his work on bills, says that, "by the Common Law, the pro-"test is to be made at the time, in the manner and by the per-"sons, prescribed in the place where the bill is payable. But, "as to the necessity of making a demand and protest, and the "circumstances under which notice may be required or dis-"pensed with, these are incidents of the original contract, "which are governed by the laws of the place where the bill "was drawn. They constitute implied conditions upon which "the liability of the drawer is to attach, according to the *lex* "*loci contractus;* and if the bill is negotiated, the like re-"sponsibility attaches, upon each successive indorsement, "according to the law of the place of his indorsement." (Sec. 176.) Such has been, so far as we are informed, the uniform doctrine of the Supreme Court of the United States. In that Court, in the case of the United States v. The United States Bank, on a bill drawn in Washington City on Paris, the drawer's liability was held to rest upon the statute of the State of Maryland. (2 How. U. S. R. 711.) The same doc-trine was sustained in New York, in an able opinion of Chief Justice Nelson, now one of the Associate Justices of the Su-preme Court of the United States. The case was one of strong features and well calculated to command the strictest scrutiny, it being a case, wherein, on this doctrine, the drawer was dis-charged by the law of the place where the bill was drawn, and the indorser was held liable according to the laws of New York, where the bill was indorsed. It was thus: A bill was drawn in one of the French West India Islands, on Davis. It was drawn payable after sight, and it was indorsed in New York. By the French Code of Commerce, such a bill, to hold the drawer and indorser liable for payment of the bill, required presentation and protest for non-acceptance and also protest

for non-payment. The bill was only protested for non-accep-
tance. This omission to protest for non-payment at the day
of payment, exonerated the drawer, by the law of the place
where it was drawn, and the indorser was held liable for pay-
ment, by the law of New York, which only required the bill
to be protested for non-acceptance, to fix the liability of the
indorser. (12 Wend. R. 439.)

It does seem, that this case is a striking illustration of the
superior advantages of the English rule, over the American,
in commercial transactions. By the former, the liability would
be uniform and fixed by the law of the place where the bill
was payable; while the latter makes it unequal and some-
times unjust, depending upon the law of the place where
drawn, and of the place where the several indorsements are
made; and it would be more in harmony with the general, if
not universal rule of law, that the law of the place where
performance is to be made, shall govern, if the English doc-
trine was sustained, as of universal obligation.

Mr. Justice Story says that the American may seem to form
an exception to the rule we have stated; but he says that it is
in strict subservience to that rule, and contends that the drawer
and indorser only contract for liability according to the *lex
loci* of the place where drawn or indorsed. (Story on Bills,
Sec. 154.) This last proposition is not clear, and satisfactory;
because, it would seem, that if it be true, that the drawer and
every indorser undertakes that the bill shall be paid at the
place of payment named in the bill, it would be difficult, on
principle, to reconcile the distinction between such undertaking,
and any other contract for performance at a particular place,
where the law is different from the *lex loci contractus*. But
the American doctrine has acquired the force of authority,
and uniformity must be observed on this question. By our
statute, then, protest and notice are dispensed with, on the
bringing the suit in the time required. The judgment must
therefore be affirmed.

Judgment affirmed.