THE HIBERNIA NATIONAL BANK, Respondent, *v.* LEOPOLD LACOMBE et al., as Commissioners, etc., Impleaded, etc., Appellants.

The drawer of a check undertakes that the drawee will be found at the place where he is described to be, and that the sum specified will there be paid to the holder when the check is presented; and if not so paid and he is notified, he becomes absolutely bound to pay the amount at the place named.

The rights of the parties, therefore, are to be governed by the laws of the place of payment.

An assignment by virtue of or under a foreign law does not operate upon a debt, or rights of action as against a person in this State.

A foreign creditor rightfully in a court of this State, pursuing a remedy given by the statutes of the State, may enforce that remedy to the same extent, in the same manner and with the same priority of lien as a citizen.

The plaintiff, a National bank organized and having a place of business in New Orleans, purchased, for value, of defendant, the M. & T. Bank, a Louisiana corporation, a draft drawn on bankers in the city of New York for $10,000, payable to plaintiff's order; the draft was duly presented to the payees at New York, and payment refused; it was duly

protested and notice given to the drawer. An action was thereupon commenced in the Supreme Court and an attachment issued, which was served on said bankers, who had funds of the M. & T. Bank in their hands. *Held,* that, under and within the meaning of the provision of the Code of Procedure (§ 427[*]), providing that an action against a foreign corporation may be brought in the Supreme Court by a plaintiff not a resident of this State, "where the cause of action shall have arisen in this State," plaintiff was to be regarded as a non-resident, that the cause of action arose in this State ; and that, therefore, the court had jurisdiction of the action.

After the delivery of the draft to plaintiff, the M & T. Bank was placed in liquidation under the laws of Louisiana, and commissioners were appointed to take possession of and administer its assets; they were made defendants, and claimed title to the attached property. *Held,* that neither the law nor the adjudication under which said commissioners were appointed could have any operation here to defeat or affect the lien of plaintiff's attachment.

The authorities as to the *lex loci* controlling bills of exchange collated and discussed.

(Argued February 10, 1881 ; decided March 1, 1881.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 14, 1880, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 21 Hun, 166.)

This action was brought upon a draft drawn by defendant, the Mechanics & Traders' Bank of New Orleans, upon M. Morgan's Sons, bankers of New York city, dated New Orleans, March 17, 1879, payable to the order of plaintiff.

The facts appear sufficiently in the opinion.

*William Henry Arnoux* for appellants. All the proceedings taken herein against the bank were void, because the said bank had ceased to exist as a corporation before the action was commenced. It had no capacity to sue or to be sued. (*State Savings Asso. of St. Louis* v. *Kellogg,* 52 Miss. 583 ; *Thornhill* v. *The Bank,* 1 Wood's U. S. C. C. 1 ; *Mudge* v. *Commrs. of Exch. Bkg. Co.,* 10 Rob. [La.] 464 ; *Dorville* v. *City Bank,*

----

[*] See Code of Civil Procedure, § 1780.

9 id. 362; *French* v. *Stanton*, 1 La. Ann. 8; *City Ins. Co.* v. *Commercial Bank*, 68 Ill. 348; *Willitts* v. *Waite*, 25 N. Y. 581.) The obligation of parties to commercial paper is to be ascertained and determined, not by the law of the place where the payment is to be made, but by the law of the place where such contract has its legal inception. (*Everett* v. *Vandryes*, 19 N. Y. 436; *Aymar* v. *Sheldon*, 12 Wend. 439; *Cook* v. *Litchfield*, 5 Sandf. 330; *Duscomb* v. *Bunker*, 2 Metc. 8; *Lowry's Admrs.* v. *Bank of Georgia*, 7 Ala. 120; *Dunn* v. *Adams*, 1 id. 527; *Cox* v. *Adams*, 2 Kelly [Ga.], 158; *Hatcher* v. *M'Morine*, 4 Devereux, 122; *Dow* v. *Rowell*, 12 N. H. 49; *Yeatman* v. *Cullen*, 5 Blackf. 240; *Holbrook* v. *Vibbard*, 2 Scam. 465; *Trimley* v. *Vignier*, 1 Bing. N. C. 151; *Slocum* v. *Pomery*, 6 Cranch, 221; Story on Prom. Notes, § 339 and notes; *Dundas* v. *Bowler*, 3 McLean, 397; *Norton* v. *Cook*, 9 Conn. 314; *Burrows* v. *Jemino*, 2 Stra. 733; Story on Prom. Notes, § 168; Story on Bills, § 165; *Rouquette* v. *Overmann*, L. R., 10 Q. B. 536; *Clopton* v. *Hall*, 51 Miss. 482; Rorer on Interstate Law, 49; *Fitch* v. *Remer*, 1 Bliss, 337; *Phil. Loan Co.* v. *Towner*, 13 Conn. 249; *Levy* v. *Levy*, 78 Penn. St. 507; 2 Kent's Com. 560, note *d*; *First Nat. Bank of Toledo* v. *Shaw*, 61 N. Y. 283, 293; *Willitts* v. *Waite*, 25 id. 577; *Cantwell* v. *Dubuque W. R. R.*, 17 How. 16; *Artisans' Bank* v. *Park Bank*, 41 Barb. 599; *Western Bank* v. *City Bank of Columbus*, 7 How. 238; *Bank of U. S.* v. *The U. S.*, 2 How. [U. S.] 711; *De Wolf* v. *Johnson*, 10 Wheat. 367; 6 Curtis, 438; *Cope* v. *Alden*, 53 Barb. 350; *Dolman* v. *Cook*, 1 McCarter, 56; *Campion* v. *Kille*, id. 229; *Andrews* v. *Torrey*, id. 355; *Chase* v. *Dow*, 47 N. H. 405; *Musson* v. *Lake*, 4 How. [U. S.] 262; *Wood* v. *Gibbs' Admr.*, 35 Miss. 560; *Matter of Glyn*, 15 Nat. Bank. Reg. 495; *Cooper* v. *The Earl of Waldegrave*, 2 Beav. 282; *Trimbey* v. *Vignier*, 1 Bing. N. C. 151; *Rouquette* v. *Overmann*, L. R., 10 Q. B. 525; *Gibbs* v. *Fremont*, 9 Exch. 25; 22 L. J. [Ex.] 302; *Crawford* v. *Branch Bank*, 6 Ala. [N. S.] 15; *Bailey* v. *Heald*, 17 Tex. 102; *Snaith* v. *Mingay*, 1 M. & S. 87; *Baker* v. *Sternes*, 9 Ex. 684; *Robertson* v. *Burdekin*, 1 Ross' Leading

Cases, 812 ; 1 Daniel on Neg. Inst. 743, § 898 ; *Freese* v. *Brownell*, 35 N. J. L. 286 ; *Everett* v. *Vendryes*, 19 N. Y. 436 ; *Hunt* v. *Standart*, 15 Ind. 33 ; *Raymond* v. *Holmes*, 11 Tex. 55 ; *Kuenzi* v. *Elvers*, 14 La. Ann. 391 ; *Lenning* v. *Ralston*, 23 Penn. St. 137 ; *Price* v. *Page*, 24 Mo. 67 ; *Boneden* v. *Page*, id. 595 ; *Page* v. *Page*, id. 596 ; *Bk. of U. S.* v. *U. S.*, 2 How. 711 ; 1 Daniel on Neg. Inst. 721, § 865 ; *Hyde* v. *Goodnow*, 3 N. Y. 266 ; *Evans* v. *Anderson*, 78 Ill. 558.) Drawers are simply sureties, and are held according to the law of the place where the bill is drawn, that is, the place where their contract is made. (*Allen* v. *Mer. Bk. of N. Y.*, 22 Wend. 215, 240 ; *Bk. of Rochester* v. *Gray*, 2 Hill, 227 ; *Carroll* v. *Upton*, 2 Sandf. S. C. 171 ; *Allen* v. *Kemble*, 6 Moore's P. C. 314 ; Phillimore's Internat. Law, § 1349 [4th ed.], p. 661 ; *Hicks* v. *Brown*, 12 Johns. 142.) All personal contracts are to be governed by the law of the place of contract. (*Ivey* v. *Lalland*, 42 Miss. 444 ; 2 Am. Rep. 606 ; *Upton* v. *Hubbard*, 28 Conn. 274, 286 ; Story's Confl. of Laws, § 514 ; *Burns* v. *Provincial Ins. Co.*, 35 Barb. 525 ; *Matter of Wilder*, 22 La. Ann. 219 ; 2 Am. Rep. 721 ; *Lenning* v. *Ralston*, 23 Penn. St. 137, 140.) Where a law of limitation of actions operates upon the debt, the courts of every State will sustain that defense when the defense is good in the State in which the contract was made, on the principle of upholding *lex loci contractus*. (*Perkins* v. *Guy*, 55 Miss. 153 ; 30 Am. Rep. 510 ; *Baker* v. *Stonebraker*, 36 Mo. 338, 340.) The instrument sued on is not in the law merchant a bill of exchange ; because it has never been accepted. (*Jones* v. *Pacific W. Co.*, 29 Am. Rep. 308.) The breach of the drawer's contract was not here, but in New Orleans. (2 Daniel's Negotiable Instruments [2d ed.], § 970 ; Chitty on Bills, 266, 93, 217 ; *Fitzgerald* v. *Staples*, 88 Ill. 234 ; 30 Am. Rep. 551 ; Bayley, 28 ; Story's Confl. of Laws, 208 ; *Hicks* v. *Brown*, 12 Johns. 142 ; *Aymar* v. *Sheldon*, 12 Wend. 445.) The right of action against foreign corporations exists only by statute, and is limited to property in this State ; as to the ownership of which property they differ in nowise from individuals. (*Hulbert* v. *Hope M. I. Co.*, 4

How. 275; *Gibbs* v. *Queens Ins. Co.*, 63 N. Y. 114; *Brewster* v. *Michigan C. R. R.*, 5 How. 183; *Whitehead* v. *Buffalo & L. H. R.*, 18 How. Pr. 218, 232; *Case* v. *Ohio Ins. Co.*, 2 C. R. 82; *Van Buskirk* v. *The Hartford Fire Ins. Co.*, 14 Conn. 583.) The money deposited with M. Morgan's Sons, by said bank, became the property of the bankers, and the bank became their creditor. (*Matter of Franklin Bank*, 1 Paige, 249; *Chapman* v. *White*, 6 N. Y. 412; *Commercial Bank* v. *Hughes*, 17 Wend. 94; *Graves* v. *Dudley*, 20 N. Y. 76.) The said bank being a Louisiana corporation, the moneys due to it from M. Morgan's Sons were, in the eye of the law, likewise located in Louisiana. (*Willitts* v. *Waite*, 25 N. Y. 584; *Hoyt* v. *Comm. of Texas*, 23 id. 224; 2 Kent's Com. 429; *Atwood* v. *The Protection Ins. Co.*, 14 Conn. 555, 562; *Van Buskirk* v. *The Hartford Fire Ins. Co.*, id. 583; *Milne* v. *Moreton*, 6 Binn. 361.) The plaintiff being a National bank organized under the law of the United States, and having its banking office in the city of New Orleans, was not a resident of the State of New York, but was a resident and citizen of the State of Louisiana, and it had no right to sue another foreign corporation in our tribunals. (*Bowen* v. *First Nat. Bk.*, 34 How. 408; U. S. R. S., §§ 5134, 5146; *Cook* v. *State Nat. Bk.*, 50 Barb. 339; 3 Abb. [N. S.] 339; *Western Bk.* v. *City of Columbus*, 7 How. 238.) The courts of one State will execute and give effect to an assignment affected by, and made operative under, the laws of another State, to the same extent and in the same manner as if voluntarily made by any individual, except where the interest of the citizens of their own or other States would be prejudiced thereby; and when to give effect to such foreign assignment would be contrary to the established law or policy of their own State. (2 Kent's Com. 406, 407, 454; *Osgood* v. *Maguire*, 61 N. Y. 524, 529; *Kelly* v. *Crapo*, 45 id. 86; *The Watchman*, 1 Ware, 233; *King* v. *Johnson*, 5 Harring. 31; *Varnum* v. *Camp*, 1 Greene [N. J.], 326; *Richmondville Manfg. Co.* v. *Prall*, 9 Conn. 487.; *Ivey* v. *Lalland*, 42 Miss. 444; 2 Am. Rep. 606; *Dunlap* v. *Rogers*, 47 N. H. 281; *Dalton* v. *Currier*, 40 id. 237, 248; *Sanderson* v.

*Bradford,* 10 id. 264; *Saunders* v. *Williams,* 5 id. 213 ; 2 Pars. on Cont. 570, note *e.*)   Where a citizen of a State pursues a fellow-citizen in another State, he may be treated as a trustee and called to account as such in the courts of his own State. (Story's Confl. of Laws, § 403, etc. ; *Sill* v. *Worswick,* 1 H. Bla. 690 ; *Phillips* v. *Hunter,* 2 id. 402; *Hunter* v. *Potts,* 4 Term, 182; *Ex parte Frank,* 1 Cook's B. L. 336; *S. C.,* 7 Bing. 762; *Blake* v. *Williams,* 6 Pick. 312; *Harris* v. *Breed,* 7 Cush. 16 ; *Peck* v. *Hibbard,* 26 Vt. 698; *Engel* v. *Scheuerman,* 40 Ga. 206; 2 Am. Rep. 573 ; *Dehon* v. *Foster,* 86 Mass. 545 ; *Vail* v. *Knapp,* 49 Barb. 299 ; *Field* v. *Holbrook,* 3 Abb. 377 ; *Dobson* v. *Pearce,* 12 N. Y. 169 ; *Mitchell* v. *Bunch,* 2 Paige, 606 ; *Mead* v. *Merritt,* id. 402; *Bushby* v. *Munday,* 5 Mad. 297; *Van Buskirk* v. *Hartford Fire Ins. Co.,* 14 Conn. 583, 588; *Potter* v. *Brown,* 5 East, 131.)   Every subject is to be deemed to be a party to the laws of his own government. (*Mather* v. *Bush,* 16 Johns. 233; *Consequa* v. *Fanning,* 3 Johns. Ch. 587 ; *Touting* v. *Hubbard,* 3 Bos. & P. 291 ; *Conway* v. *Gray,* 10 East, 536 ; 2 Pars. on Cont. 568 ; *Campbell* v *Hall,* Cowp. 208 ; *Holmes* v. *Remsen,* 4 Johns. Ch. 460 ; *Keyser* v. *Rice,* 47 Md. 203; 28 Am. Rep. 448.)   In all cases where there is no law of the State violated, or the right of the citizen interfered with, and where the litigants are subject to the same laws, our courts refuse, on principles of comity, to interfere.   (*Willitts* v. *Waite,* 25 N. Y. 577, 587; Story's Confl. of L., § 413; *Van Buskirk* v. *Hartford Fire Ins. Co.,* 14 Conn. 583, 586; *Olivier* v. *Townes,* 2 Martin [La.], 97 ; *Abraham* v. *Plestow,* 3 Wend. 538, 549; *Holmes* v. *Remsen,* 20 Johns. 229.)   Under this spirit of comity our courts have recognized that a foreign assignee in statutory assignments, or one deriving title through such assignee, has a standing in our courts. (*Hoyt* v. *Thompson,* 5 N. Y. 320, 344; Story's Confl. of L., § 420; *Willitts* v. *Waite,* 25 N. Y. 584.)   An assignee can, not only be a party in a State court, but he can sue for and recover penalties not known to the State court.   (*Cook* v. *Whipple,* 55 N. Y. 150; *Thompson* v. *Sweat,* 73 id. 622; *Ansley* v. *Patterson,* 77 id. 156; *Claflin* v. *Houseman,* 93 U. S. [3 Otto]

137.)   The insolvent laws of every State operate upon the citizens of that State, and upon the claims held by them as against citizens of the same State, without respect to the place of origin or performance of the contract. (*Scribner* v. *Fisher*, 2 Gray, 43, 48; *Burrall* v. *Rice*, 5 id. 539; *Brown* v. *Collins*, 41 N. H. 405; *Baldwin* v. *Hale*, 1 Wall. 223; *Newmarket Bank* v. *Butler*, 45 N. H. 236; *Kelley* v. *Drury*, 9 Allen, 27; *Mather* v. *Bush*, 16 Johns. 233; *Hempstead* v. *Reed*, 6 Conn. 480, 491; *Norton* v. *Cook*, 9 id. 314; *Ogden* v. *Saunders*, 12 Wheat. 213; *May* v. *Breed*, 7 Cush. 42; *Dawes* v. *Head*, 3 Pick. 144, 149; *Goodwin* v. *Jones*, 3 Mass. 517; *Lanckton* v. *Wolcott*, 6 Metc. 307; *Richardson* v. *Wyman*, 4 Gray, 555; *Dearborn* v. *Ames*, 8 id. 1; *Speed* v. *May*, 17 Penn. St. 94; *Lowry* v. *Hall*, 2 Watts & S. 131; *Milne* v. *Moreton*, 6 Binn. 360.)

*Thomas S. Moore* for respondent.   An action against a foreign corporation may be brought by a non-resident, "when the cause of action shall have arisen, or the subject of the action shall be situated within the State." (Code of Procedure, § 427; Chitty on Bills, 144 [11th Eng. ed.]; *Cumberland Coal Co.* v. *Hoffman Coal Co.*, 30 Barb. 168; *Burckle* v. *Eckhart*, 3 N. Y. 132; *Johnson* v. *Adams Tobacco Co.*, 14 Hun, 89; 2 Kent's Com. * 460; *Cooper* v. *Earl of Waldegrave*, 2 Beav. 282; *Bk. of Commerce* v. *The Rutland R. R. Co.*, 10 How. Pr. 1; *Whitehead* v. *Buffalo & L. H. R. R. Co.*, 18 id. 233; *Pomeroy* v. *Ainsworth*, 22 Barb. 128; *Conn. Mut. Life Ins. Co.* v. *Cleveland R. R. Co.*, 41 Barb. 9; 23 How. Pr. 180; *Everett* v. *Vendryes*, 19 N. Y. 436; *Spencer* v. *Rogers Locomotive Works*, 8 Bosw. 612; *Western Bk.* v. *City Bk. of Columbus*, 7 How. Pr. 238; *Cantwell* v. *Dubuque & West R. R. Co.*, 17 id. 16; *Citizens' Bk.* v. *Park Bk.*, 41 Barb. 599; 1 R. S. 771; 2 id. [6th ed.].) The Mechanics and Traders' Bank was not dissolved as against creditors attaching its property in this State. (1 Ray's Stats. of La., § 284; *Matter of Independent Ins. Co.*, 1 Holmes, 103, U. S. C. Ct. [Mass.]; *Thornhill* v. *The Bk.*, 1 Woods, 1; *Mat-*

*ter of Washington Marine Ins. Co.*, 2 Benedict, 292.) Even though the decree of the District Court of Louisiana dissolved the Mechanics and Traders' Bank, it could only do so as regards its property in Louisiana. As to property in the State of New York it could take effect only subject to the claims of creditors. (*Hamilton* v. *Accessory Transit Co.*, 26 Barb. 46; *City Ins. Co.* v. *Com. Bank*, 68 Ill. 348; *Murray* v. *Vanderbilt*, 39 Barb. 140.) The laws of Louisiana could not affect the property in New York as against creditors, and as to them the property was liable to attachment as to defendant's debts. (*Holmes* v. *Remsen*, 20 Johns. 229; *Abrahams* v. *Plestoro*, 3 Wend. 548; *Hoyt* v. *Thompson*, 5 N. Y. 341; *Johnson* v. *Hunt*, 23 Wend. 91; *Willetts* v. *Waite*, 25 N. Y. 577; *Kelley* v. *Crapo*, 45 id. 86; Story's Conflict of Laws, §§ 413, 414; 2 Kent's Com. 406, 407.) The plaintiff has the same right to sue here as a domestic corporation. (2 R. S. 457, § 1; 3 id. [6th ed.] 744, § 1; *Merrick* v. *Van Santvoord*, 34 N. Y. 217; U. S. R. S., § 5136; U. S. Const., art. 4, § 2; *Citizens' Ins. Co.* v. *Com. Bk.*, 68 Ill. 348; *Betton, Assignee*, v. *Valentine*, 1 Curtis, 168; *Merrick's Estate*, 2 Ashmead, 485; *Lowring* v. *Hall*, 2 Watts & Serg. 129; *Harrison* v. *Sterry*, 5 Cranch, 302; *Ogden* v. *Saunders*, 12 Wheat. 262, 363, 364; *Blake* v. *Williams*, 6 Pick. 303; *Hoyt* v. *Thompson*, 5 N. Y. 351; *Abraham* v. *Plestoro*, 3 Wend. 538; *Johnson* v. *Hunt*, 23 id. 89.) The commissioners in liquidation of the bank, having been made defendants by an order of the court upon their own application, they are in the same position as the Mechanics and Traders' Bank would be were it defending the action, and it would have no defense. (*Willetts* v. *Waite*, 25 N. Y. 586; Story's Conflict of Laws, § 412 *et seq.*; Westlake's Conflict of Laws, § 281.) The deposit of the defendant, the Mechanics and Traders' Bank of New Orleans, with M. Morgan's Sons, was liable to attachment. (Code, §§ 646, 648; *Lyman* v. *Cartwright*, 3 E. D. Smith, 117; *Willetts* v. *Waite*, 25 N. Y. 577; *Crosby* v. *Lumberman's Bank*, Clarke's Ch. 234, 286; *Betton, Assignee*, v. *Valentine*, 1 Curtis, 171; *Blake* v. *Williams*, 6 Pick. 303.)

DANFORTH, J. The plaintiff is a corporation created under an act of Congress of the United States providing for the organization of banking associations. "The Mechanics and Traders' Bank" was also a banking corporation created under the laws of Louisiana, and each corporation had its place of business in the city of New Orleans. On the 17th day of March, 1879, the plaintiff purchased for value of the "Mechanics and Traders' Bank" a check made by them on that day, addressed to "M. Morgan's Sons," bankers in the city of "New York," whereby they directed that firm to pay to the order of the plaintiff $10,000. On the 26th of March, 1879, the check was duly presented to the payees for payment. It was refused. The check was duly protested and notice thereof given to the drawer. On the 27th day of March, 1879, this action was commenced against the "Mechanics and Traders' Bank" as drawer, and an attachment issued thereon was served on M. Morgan's Sons, who had funds of the drawer in their hands. Prior to that day, but after the delivery of the check to the plaintiff, the "Mechanics and Traders' Bank" was placed in liquidation under the laws of the State of Louisiana, and certain persons were by the court in that State appointed commissioners to take possession of and administer its assets. They were afterward made defendants in this action, and set up in defense their appointment under the circumstances above mentioned, their title through it to all the property of the bank, and also that the Supreme Court of this State had no jurisdiction to issue the attachment herein or entertain the action. The plaintiff has had judgment, and the defendants insist upon these objections among others as grounds for reversing it:

First, as to the jurisdiction of the court: At the time the action was commenced, the Code of Procedure was in force, and section 427 provided, among other things, that an action against a foreign corporation might be brought in the Supreme Court by a plaintiff not a resident of this State, "where the cause of action shall have arisen within the State." For this purpose a foreign corporation is to be regarded as a non-resident. What does the statute mean? We have learned from Coke that "an

action is the lawful demand of one's right," and from the Code that complaint therein "must contain a statement of the facts constituting a cause of action." In any given case, then, the cause of action must arise upon the facts, and these appearing, we have only to inquire where they occurred. The complaint in this case sets out the check, shows the performance of those things which the law merchant prescribes as necessary to be done to change the conditional liability of the drawer into an absolute one, and that the proper steps were taken to change it. There are thus placed before us two classes of facts: first, the contract and its obligations; second, the things done in pursuance of the contract. The argument for the appellants assumes that the first constitutes the cause of action, and, as the contract was made in Louisiana, therefore, excludes jurisdiction from our courts. Authorities are not needed to show that in general every contract is to be expounded and enforced by the law of the place where it is made. But the curious will find the ancient ones collected by Wedderburn, of counsel in *Robinson* v. *Bland* (1 Wm. Blackstone, 256), and more modern ones in Story's Conflict of Laws (*infra*). Thus, if a bill is drawn in France, and then indorsed in a way which is sufficient here but insufficient there, the indorsement would be held void. (*Trimbey* v. *Vignier*, 1 Bing. N. C. 151.) But this general rule admits of an exception, as where the parties at the time of making the contract had a view to a different kingdom. MANSFIELD, C. J., in *Robinson* v. *Bland* (*ante*), or as put by Mr. Justice THOMPSON in *Smith* v. *Smith* (2 Johns. 241), "unless the parties had a view to its being executed elsewhere, in which case it is to be considered according to the laws of the place where the contract is to be executed." Therefore, the English court held, in *Robinson* v. *Bland*, that a bill of exchange drawn in France by John Bland upon himself in England, payable to the order of the plaintiff, was invalid because given for a consideration void by English law, saying: "The bill is made payable in England and is, therefore, an English transaction and to be governed by the local law." And conversely, in *Rouquette* v. *Overmann*, etc. (L. R., 10 Q. B. 525), where the

subject under consideration was the liability of certain persons who, as drawers residing in London, had there made a draft upon certain French bankers in Paris, payable to the drawers' own order, but indorsed by them to the plaintiff. The drawers having been charged as drawers under the French law were sued by the plaintiff in London, and it being objected that the contract of the drawer was to be construed according to the laws of England, where he resided and where he made the bill, the court were of a different mind, saying: "It is unnecessary to consider how far this position may hold good as to matter of form, or stamp objections, or illegality of consideration, or the like. We cannot concur in it, as applicable to the substance of the contract, so far as presentment for payment is concerned, still less to a formality required on non-payment to enable the holder to have recourse to an antecedent party on the bill. Applied to these incidents of the contract, this reasoning appears to us altogether to overlook the true nature of the contract, which a party transferring for value the property in a bill of exchange makes with the transferee." * * * "He engages as surety for the due performance by the acceptor of the obligations which the latter takes on himself by the acceptance. His liability, therefore, is to be measured by that of the acceptor, whose surety he is; and as the obligations of the acceptor are to be determined by the *lex loci* of performance, so also must be those of the surety;" and thus shows that the drawer contracted in view of the laws of the country where the bill was to be paid, and to such an extent that he was held to be affected by changes in the local law, viz.: the law of France. In that case, also, *Allen* v. *Kimble*, cited here by the appellants, is criticised and found to have "nothing to do with the law relating to bills of exchange;" and it is said that in deciding *Gibbs* v. *Fremont*, also cited by the appellants, *Allen* v. *Kimble* was followed, and the court withholds "any opinion as to the soundness of the decision." *Gibbs* v. *Fremont* (9 Ex. 25) decided that a bill of exchange drawn in California on Washington, in the District of Columbia, bore interest at California rate. But this is not only ques-

tioned by the later English cases (*supra*); it is contrary to the doctrine of earlier English cases, and to those of this State, some of which are collected in the note to page 32, vol. 9, Exchequer Reports, and to the principle upon which *Dickinson* v. *Edwards* (77 N. Y. 573) was placed, and to the reasoning and exposition of the law governing the interpretation of such a contract therein stated. And so in *Fanning* v. *Consequa* (17 Johns. 510), the general rule and the exception is stated in the same manner, viz.: If by the terms or nature of the contract it appears that it was to be executed in a foreign country, then the place of making the contract becomes immaterial. And in *Hyde* v. *Goodnow* (3 N. Y. 267), it is declared that the rights of the parties to a contract are to be determined by the laws of the place where the contract is to be performed. To the same effect is the doctrine of the common and civil law wherever administered, as may be seen by referring to the cases cited in those above noted, and in the more numerous ones collected by Judge STORY in support of the same proposition. (Story on Conflict of Laws [7th ed.], §§ 239–244.) But, again, the law of the place of contract is not necessarily one place. It is the law of all the places to which and for the purposes for which it has reference. A bill of exchange, therefore, is to be construed according to the laws of each place at which the contract contemplated that something is to be done by either of the parties. This is illustrated in *Rouquette* v. *Overmann* (*supra*), *Horne* v. *Rouquette* (L. R., 3 Q. B. Div. 514), by the decision of this court in *Everett* v. *Vandryes* (*infra*), and in *Lee* v. *Selleck* (33 N. Y. 615). The note in question, in the last case, was made by Benjamin Selleck, in and dated at New York city, payable to the order of George Selleck, in Morris, Ill., and at that place he indorsed it and sent it to the maker by mail, at Beloit, Wis. The maker sent it in like manner to the plaintiffs in New York city. The indorser having been duly charged was sued in this State by publication as a non-resident, and money in bank in New York city belonging to him was attached. The defense set up was that he indorsed the note in Illinois, and that by the laws of that State an indorsee could

not be made liable until judgment and execution had been obtained against the maker. At the Circuit the defendant had judgment upon the ground that the law of Illinois governed. The General Term reversed it, stating the general rule governing contracts, as above referred to, and holding that the maker, by the terms of his contract, was to perform it in Illinois; but that the indorser was bound, as by an independent contract, to pay in New York. SUTHERLAND, J., saying: "By indorsing the note George Selleck undertook that, if when duly presented it was not paid by the maker, he, the indorser, would, upon being properly notified of the non-payment, pay the same to the indorsees or other holder. Where? Can there be a. doubt that the indorser and indorsees contemplated, if the indorsees retained the note, that in default of payment by the maker the indorser was to pay the indorsees in New York? The maker, by the note, promised to pay at Morris, Ill.; but the indorser, by his indorsement, promised to pay to the indorsees in New York." As to him, therefore, the court held that the law of New York, and not that of Illinois, applied. Upon appeal to this court the conclusion of the General Term was approved. PORTER, J., saying: "The engagement of the indorser, though auxiliary in its character, was an independent contract, and could only be fulfilled by direct payment to the plaintiff in New York," and the judgment was affirmed. The general principles involved in the above discussion will, if applied to the facts in this case, render it easy of solution. In substance, the drawer undertakes that there shall be paid to the holders of the check the sum of money therein mentioned at the place named. These things are of the essence of the contract, and unless performed the object of the payee is defeated. It purchased the check in New Orleans because, as we may suppose from the paper itself, it wanted to remit money to New York, and for this it paid a valuable consideration. Although the paper is dated in New Orleans the drawer agrees that the payer shall receive the amount named in New York. We see, therefore, that the buyer of the draft does not want the money in New Orleans. The drawer of the draft has the money in

New York, and so the exchange is agreed upon.    The check is evidence of the contract, and under the general law is the contract itself.    In view of this the parties have contracted.    The drawer undertakes that the drawee shall be found in the place where he is described to be, and shall have effects in his hands, and from these, or upon other consideration (good as between him and the drawer, and with which the payee has nothing to do), pay the check.    He undertakes, therefore, that it shall be paid when presented, and although the drawee is designated to make the payment, he, as between the payee and drawer, is only an instrument of the drawer, and the latter, therefore, since he undertakes for his agent's act, " undertakes that it shall be done at all events."    (*Mellish* v. *Simeon*, 2 H. Bla. 378.) The drawee at this stage of the transaction is under no obligation to the payee; but by receiving the check the payee agrees in the first instance to go to the drawee and give him an opportunity to comply with the direction of the drawer, and if he does not, and the drawer is notified thereof, the latter becomes absolutely bound to pay the amount named in the check. Where is this contract to be performed?    Clearly in New York city.    Nor could it be performed elsewhere.

The only object of the parties, payee as well as drawers, in entering upon it was to have the money paid in New York. This only was in contemplation of the parties.    As is said in 2 Daniels' Negotiable Instruments, page 685 : " He, the drawer, has contracted that the amount shall be there paid by the hand of B.," the drawee.    Any other construction would render the contract meaningless, and productive only of mischief.    The plaintiff, in New Orleans, wants money in New York.    Defendant promises it shall be there for him, and, relying on that, the plaintiff pays in New Orleans the agreed amount.    It is obvious that it cannot be ascertained whether the promise is kept until it is taken to New York, and then, upon the theory of the appellant, if it is not performed, the promise is to be returned to the drawer in New Orleans, and then, in New Orleans, the money is to be repaid. And thus, after delay, the plaintiff is restored to his original

desire, and must find some other method of transferring his money to New York. There is before us a single undertaking. It could be performed only in New York, and the general law above referred to shows that the rights of the parties are to be governed by its laws as the *lex loci*. Nor is the question a new one. In this court it has been declared as "too well established to require a reference to books." (*Everett* v. *Vendryes*, 19 N. Y. 436.) It was there distinctly presented. The action was by the indorser of a bill of exchange drawn in New Grenada upon a corporation in New York city. The indorsee sued the drawer of the draft. The drawer defended. He had been charged as drawer by reason of default of the drawee. He denied the indorsement by the payee. He also sought to amend his answer by setting up the law of New Grenada, under which he claimed the draft was not well indorsed. The decision of the court shows the difference between the rules applicable to the contract of the drawer and that of the indorser. Holding that the contract of the former was to be governed by the law of the place where it was to be performed, saying, " By drawing the bill the defendant undertook that the drawee in New York would pay it to the payee or his order, and if the drawee did not so pay it, he himself would make such payment." What payment? Why, the payment called for by the draft — a payment in New York. And such is the construction to be given to the defendants' contract here. The case also illustrates the principle above adverted to, that more than one law will apply to the same bill of exchange. Holding, as in *Lee* v. *Selleck* (*supra*), that the contract of the indorser would be governed by the law of New Grenada, where it was made. The drawee was held under the law of the place of performance, and the indorser under the place of contract. And this accords with well defined principles as stated in 2 Daniels' Negotiable Instruments, page 684, and avoids the inconsistency of the law in respect thereto, which the learned author deprecates. (Id. 685.) Other considerations lead to the same result. The check was written in Louisiana, but the engagement was consummated in this State. By its terms

it was necessary to present it to the drawee, and from that act and its consequences came the final obligation of the drawer. We are thus brought to examine the other or second class of facts, viz.: the things done in pursuance of the contract; for without them no cause of action had arisen against the drawer. (*Harker* v. *Anderson*, 21 Wend. 373.) The payee, then, must present the check, and if paid, the conditional obligation of the drawer is discharged. It was presented but not paid, and notice, according to the law merchant, was given to the drawer; not personally, or in New Orleans, but by depositing it in the post-office in New York. At that moment the cause of action arose, and the obligation of the defendant was perfect. (*Walker* v. *Bk. of the State of New York*, 9 N. Y. 582.) And this is so, although the drawer resided in one State, and the presentment and notice occurred in another. The holder might redraw for both interest and damages, or he might sue. In Daniels (*supra*, § 1213) the author says, where a bill is dishonored for non-acceptance a right of action accrues at once against the drawer. "It is plain where there was no need of acceptance the same result would follow non-payment." The learned author, in support of his dictum, cites *Robinson* v. *Ames* (20 Johns. 146). That was assumpsit against the drawers of a bill made by them in Georgia (where they lived) upon Townshend & White, merchants in New York city. And, being protested, notice was sent by mail, to the drawers, directed to them at their residence. It was not suggested that this was insufficient. Indeed, the rule is elementary, and the liability is one of the effects of the contract. There was, first, the right conferred on the payee; second, the duty of the drawer to fulfill it; third, the right of action which arises from the non-fulfillment of it. The first of these may be said to have happened in Louisiana at the moment when the check was delivered to the payee; the second could only happen in this State, and the third was consequent thereto. The learned counsel for the appellant says: "It is true the cause of action was complete upon notice," but contends that "notice did not occur here. Notice was given to the drawer, and he was in New Orleans; any notice given here would be absolutely worth-

less." In that view these proceedings against the drawer could only be taken in New Orleans; or before action brought in this State, the drawer must actually receive the notice. It is, perhaps, enough to say that our preceding observation as to the nature of the drawer's contract and his duty of performance do not admit of either result. If the holder of a protested bill may at once sue or at once redraw (Story on Bills, 331), it is because a right attaches upon the concurrence of the above events, and I know of no authority, nor has any been cited, which entitles the drawer of a check to a moment's delay on the part of the holder. Having one dishonored obligation of the drawer he is not required to subject himself to further disappointment by calling upon him with another request, and in the language of PARKER, Ch. J., in *Shed* v. *Brett* (1 Pick. 411), "it may be asked ' who would take a bill or note remitted from New York if this doctrine be correct ?' And if the parties liable be beyond sea, such instruments would be mere waste paper. If the bill should not be accepted, * * * the unfortunate holder, with property belonging to the drawer * * * before his eyes, must remain an idle spectator of the scramble of other creditors for it, or suffer it to be withdrawn by the debtor himself, without the power of arresting it. This cannot be sound doctrine." We conclude, therefore, that the cause of action in the case before us arose where the draft, by its terms, was payable, when payment was refused and notice given; these things constitute a cause of action and it has arisen within this State. This construction of the words of the statute (§ 427) agrees with that given by the English courts to similar language in the statutes of that country. In *Durham* v. *Spence* (L. R., 6 Ex. Cas. 46), PIGOTT says: "What did the legislature mean when it spoke of the cause of action arising in England? Did it mean what has been termed the whole cause of action; that is, both the contract and the breach? I think that is not the true construction. I understand by cause of action that which creates the necessity for bringing the action. No doubt to make the act or omission complained of a cause of action, a contract must have preceded; but so also a negotiation must have

preceded the making of the contract. Yet, I should not in-
clude that negotiation, nor any of the other circumstances that
might form part of the necessary evidence in the cause, as the
ground work of the cause of complaint, but only the cause
of complaint itself, that is the breach ; " and adds, " we are not
justified in introducing into the statute a word not found there,
and saying that where the legislature says cause of action it
means whole cause of action, and not that which the words
used naturally express; the fact which gives rise to the action."
CLEASBY, B., says: " The cause of action must have reference
to some time as well as some place. Does then the considera-
tion of the time when the cause of action arises give us any
assistance in determining the place where it arises? I think it
does. The cause of action arises when that is not done which
ought to have been done; or that is done which ought not
to have been done. But the time when the cause of
action arises determines, also, the place where it arises, for
when that occurs which is the cause of action the place where
it occurs is the place where the cause of action arises." MARTIN,
B., differed, but upon grounds not affecting our inquiry. To
the same effect are many cases in our own courts, referred to
by the General Term in its opinion and cited by the respond-
ent here, and although, as the appellants say, these are not of
binding authority, yet they express the opinion of very able
and learned judges, and are, therefore, entitled to great respect.
It is satisfactory to find that we are not called upon to decide
differently. We think, therefore, that the action was well
brought, and it follows that the plaintiff has a right to its en-
forcement in any manner prescribed by the law of this State.

The remaining question relates to the claim made by Messrs.
Lacombe and others, commissioners appointed by the court in
Louisiana. Neither the law nor the adjudication under which
they were appointed can have any operation here. They are
strictly local and affect nothing more than they can reach.
For the rule, as we conceive, is well settled that an assignment
by virtue of or under a foreign law does not operate
upon a debt, or right of action, as against a person in this

State. The plaintiff as we have seen, although a foreign creditor, is rightfully in our courts pursuing a remedy given by our statutes. It may enforce that remedy to the same extent and in the same manner and with the same priority as a citizen. Any other construction would make the permission of the statute a form without benefit ; a formality, and not matter of substance ; a mere delusion. Once properly in court and accepted as a suitor, neither the law, nor court administering the law, will admit any distinction between the citizen of its own State and that of another. Before the law and in its tribunals there can be no preference of one over the other. (*Abraham* v. *Plestoro*, 3 Wend. 548; *Johnson* v. *Hunt*, 23 id. 91 ; *Hoyt* v. *Thompson*, 5 N. Y. 351; *Merrick* v. *Van Santvoord*, 34 id. 217 ; *Blake* v. *Williams*, 6 Pick. 206.) The plaintiff, by the process of our courts, has acquired a right, of which no principle of national comity requires us to deprive it. It is said by Chancellor KENT, in *Holmes* v. *Remsen* (4 Johns. Ch. 470), to be "admitted in all the cases that every country may by positive law regulate as it pleases the disposition of personal property found within it, and may prefer its own attaching creditor to any foreign assignee, and no other authority has a right to question the determination;" and to the same effect are the observations of PLATT, J., in *Holmes* v. *Remsen* (20 Johns. 254); and so it has been held through various intermediate cases to that of *Kelly* v. *Crapo* (45 N. Y. 86), in which the late chief judge of this court regards the doctrine that a title acquired under foreign bankrupt or insolvent proceedings will not prevail against the rights of attaching creditors under the laws of the State, where the property is actually situated, so well settled, as to make it quite unnecessary to review the authority or the history of the decisions on that subject. The question, then regarded as too fully settled to be open for review, we see no reason to again discuss. That case, it is true, was reversed by the Supreme Court of the United States, but upon grounds not affecting the principle here involved. It follows that, however fatal the adjudication in Louisiana may be to the existence of the defendant corpora-

tion in that State, it cannot deprive its creditors of the remedies afforded by other forums against its property. This action was commenced before the intervention of the commissioners, and to it they have established no defense, nor shown sufficient reason for defeating the priority of lien acquired by the proceedings therein. ( *Willitts* v. *Waite*, 25 N. Y. 586; *Folger* v. *Columbian Ins. Co.*, 99 Mass. 267.) If the plaintiff has by its proceedings obtained an advantage against the law and adjudications of Louisiana, it is a resident of that State, and, as such, the appellants' counsel contends, may there be overhauled and made to account for what it has gained here. To that remedy, if it exist, the defendants may properly be remitted. The other points raised by the ingenious counsel for the appellants have been carefully considered by us, as have, also, the authorities cited in their support. The considerations already stated indicate that in our opinion they disclose no error in the decision of the court below, and that the judgment appealed from should be affirmed.

All concur, except Rapallo. J., absent.

Judgment affirmed.