GUST BELESTIN, Appellant, v. FIRST NATIONAL BANK, Respondent.

Kansas City Court of Appeals, February 2, 1914.

1. CONTRACTS: Foreign State: Place of Performance. A contract for the payment of money, drawn in one State to be performed in another, as to matter of payment, is governed by the law of the place where it was to be performed.

2. ————: Bill of Exchange: Drawer: Payee: Drawee: Forged Endorsement: Payment. A bank in Kansas City, Missouri, drew its bill of exchange on a bank in London, England, for sixty pounds, receiving $294 therefor from the payee to whom it delivered the bill. The payee sent it in a letter to his brother in Tripoli, Greece. The latter received the letter but the bill had been taken. Shortly afterwards the drawee bank in London, in good faith, paid the bill to an impostor on a forged endorsement and charged the Kansas City bank with the amount. By act of Parliament a drawee bank which, in good faith, pays a bill on the forged endorsement of the payee makes a valid payment; but by the law of Missouri where the bill was drawn, such payment is invalid. It was *held* that the law of England governed, and that the bill was paid and that the payee could not maintain an action against the drawer.

3. ———: **Knowledge of Foreign Law: Payment.** A drawer of a bill of exchange on a drawee in a foreign country, in issuing the bill and the payee in receiving it, must be held to have acted with a view of the law of the foreign State as to what constitutes a payment; and if the bill is paid by the drawee in accordance with the law, although on a forged endorsement, the drawer is not liable to an action by the payee.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*Reinhardt, Schibsby & Muenich* for appellant.

As between the drawer and the payee of a draft the law of the place of making the contract is the law that governs the liability of the drawer to the payee. And the place of performance, as between drawer and payee is the place where the drawer resides and issues the draft. Seabright v. Calbraith, 4 Dallas, 325; Du Costa v. Cole, Skinners Reports, 272; Aimsinck v. Rogers, 189 N. Y. 252; Tilden v. Blair, 88 U. S. 241; Am. & Eng. Ency. (2d Ed.), pp. 1346 and 1348; 17 Cyc., pp. 639 and 648; Carnegie v. Morrison, 2 Metcalf, 381-387; Story Conflict of Laws (8 Ed.), Secs. 314, 315, 898, page 439; Daniels Neg. Inst. (5 Ed.), Secs. 898-911; Daniels Neg. Inst. (4 Ed.), Secs. 898-901.

*Ball & Ryland* for respondent.

(1) The lower court correctly held that it was error to admit the assignment and the testimony respecting names. Martin v. Barron, 37 Mo. 301 (304); Skelton v. Sackett, 91 Mo. 379; Turner v. Gregory, 151 Mo. 103; Becker v. Ins. Co., 68 Ill. 412; Monihan v. The People, 3 Colo. 367. (2) Payment of the drawee bank in London in due course was performance of the drawer's contract, and whether such payment

was made is to be determined by the law of England and not of Missouri. Everett v. Ventryes, 19 N. Y. 436; Hibernian Natl. Bank v. La Combe, 84 N. Y. 367; Scudder v. Bank, 91 U. S. 406; 1 Daniel Neg. Inst. (Ed. 1879) 8; 2 Wharton Conflict of Laws (1903 Ed.), 977, 983; 7 Cyclopedia of Law and Proc. 1051; 7 Cyc. 635, 642, 648; Sykes v. Bank, 19 L. R. A. (N. S.) 665; S. C., 98 Pac. 205.

ELLISON, P. J.—Plaintiff, living at Kansas City, Missouri, had a brother named Macke Belestin who lived in Tripolis, Greece and he desired to send to his brother a draft on a London banking house for sixty pounds. He went to the defendant bank in Kansas City on the second of April, 1906, and procured its bill of exchange on a London bank for sixty pounds, paying to defendant $294; and on the same day he mailed it to his brother in Greece. The brother received the letter but the draft had been taken out. On the eighteenth of May 1906, the bill was presented for payment to the bank in London with the name, Macke Belestin, endorsed thereon. This endorsement was a forgery, but the bank believing it to be genuine paid the bill in good faith. When plaintiff learned these facts he demanded of defendant that it repay him the sum he paid for the draft and defendant refused. Plaintiff then instituted this action and obtained a verdict in the trial court. Afterwards defendant's motion for new trial was sustained and plaintiff appealed from that order.

The law in England, as evidenced by act of Parliament pleaded by defendant, defines such a draft as defendant gave plaintiff as a bill of exchange and defines a checque as a bill of exchange drawn on a banker payable on demand. That law then provides:

Section 3: "A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the

person to whom it is addressed to pay on demand, or at a fixed or determinable future time, a sum certain in money, to or to the order of a specified person or to bearer.''

Section 59: ''A bill is discharged by payment in due course by or on behalf of the drawee or acceptor. Payment in due course means payment made at or after the maturity of the bill to the holder thereof in good faith and without notice that his title to the bill' is defective.''

Section 60: ''When a bill payable to order on demand is drawn on a banker and the banker on whom it is drawn pays the bill in good faith and in the ordinary course of business, it is not incumbent on the banker to show that the endorsement of the payee or any subsequent endorsement was made by or under the authority of the person whose endorsement it purports to be and the banker is deemed to have paid the bill in due course, although such endorsement has been forged or made without authority.''

The law in this State does not allow the good faith of the drawee banker to discharge him, if he pays the bill on a forged endorsement.

The question involved has been stated to be: Does the law of the place of payment of a bill determine the rights of the parties, or, are those rights governed by the law of the place where the bill was drawn? Or, stated in a way making it applicable to the circumstances of this case, are the rights and liabilities of this defendant under the facts shown at the trial, governed by the law of England where the bill was payable or the law of Missouri where it was drawn?

On the general proposition as to which law governs, that of the place where the bill is drawn, or that of the place where it is payable, much authority has been cited by either side. The drawer, of course, is only liable to do what he agrees to do by the act of drawing and delivering the bill to the payee, and many

decisions are shown by plaintiff to the effect that his agreement was not that he would pay the bill at the foreign place of payment, but that he would pay back to the payee what he received for it from him at the place where drawn, if it was not paid by the drawee at the place of payment. Hence he says that as the bill was not paid at the place of payment, defendant, in compliance with the law of the place of his performance (Missouri) must pay back to him the amount he paid for the bill. From whatever point of observation which can be had of the case, that proposition forms the basis of plaintiff's claim. Yet we believe it is fallacious, because it assumes the bill was not paid, that being the thing defendant denies. If payment of the bill had been refused by the drawee, then, of course, defendant's obligation incurred in Missouri to pay back to the payee would have arisen. But the amount called for by the bill was paid and was charged up to defendant's account and defendant is out that much money, and if he pays plaintiff it will be a clear loss. So, the real questions are, was the payment actually made such a payment as discharged the bill? And is a payment made according to the law of the place of payment a discharge of the drawer's obligation? Now the law of the place of performance of a contract governs as to matters of performance. This is especially true "for the purposes of payment and the incidents of payment." [Scudder v. Union Nat'l Bank, 91 U. S. 406, 412; Hibernia Nat'l Bank v. Lacombe, 84 N. Y. 367, 381; 2 Wharton's Conflict of Laws, secs. 451, 451d.] And conceding again, that the place of performance of defendant's contract was in Missouri, which contract it is stated in many authorities was only to pay back if the bill was not paid by the drawee, where is the showing that the latter did not pay it? There is no evidence of that kind. The evidence is that the drawee paid and discharged the bill under the law of the place of performance. So it

seems to us that the ground is taken from under plain-
tiff's position. The cases cited by him are cases where
there had not been any payment. In none of them was
there presented the question involved here of the suffi-
ciency of the payment.

In Everett v. Ventryes, 19 N. Y. 436; Hibernia
Nat'l Bank v. Lacombe, 84 N. Y. 367, 381 and Amsinck
v. Rogers, 189 N. Y. 252, the two first cited by defend-
ant, and the last strongly relied on by plaintiff, treat
of the question before us more inferentially than di-
rectly; for they were decisions upon questions of en-
dorsement, protest and notice. It is in the last of these
cases (p. 257) where it is repeatedly stated that the
"drawer of a bill does not contract to pay the bill in
the foreign place on which it is drawn, but only guaran-
tees its acceptance and payment in that place by the
drawee, and agrees, in default of such payment, upon
due notice, to reimburse the holder in principal and
damages at the place where he entered into the con-
tract." This proposition is supported by Price v.
Page, 24 Mo. 65, though it is denied in Guernsey v.
Imp. Bank of Canada, 188 Fed. 300, 304, 305. But, as
already stated, we have assumed, for present pur-
poses, that the proposition is correct.

So, accepting the last New York case (Amsinck v.
Rogers) as authority, we do not see where it helps
plaintiff's situation. It did not present the question
plaintiff presents to us neither did any other of his
cases. On the contrary, it quotes with seeming ap-
proval (p. 264) the following from Scudder v. Union
Nat'l Bank, *supra*, cited by defendant, viz.:

"The rule is often laid down that the law of the
place of performance governs the contract. . . . For
the purposes of payment and the incidents of payment
this is a sound proposition. Thus, the bill in ques-
tion is . . . in law a sight draft. Whether a sight
draft is payable immediately upon presentation or

whether days of grace are allowed, and to what extent, is differently held in different states. The law of Missouri, where this draft is payable, determines that question in the present instance. The time, manner, and circumstances of presentation for acceptance or protest, the rate of interest when this is not specified in the bill (citations), are points connected with the payment of the bill, and are also instances to illustrate the meaning of the rule, that the place of performance governs the bill.''

But plaintiff advances a suggestion to the effect that as far as this defendant is concerned it has no right to say the bill was paid in London, for the reason that the act of Parliament above quoted was passed for the protection of the drawee (the London bank in this case) and that it had no effect on the obligations and liabilities of the drawer (the defendant in this case). And two or three cases decided by the English courts are cited in support of this proposition: Vagliano Bros. v. Bank of England, L. R. 22 Q. B. Div. 103, 115, (1889); Ogden v. Benas, L. R. 9; Common Pleas Cases 513; Babbett v. Pinkett, 1 Exchequer Div. 368.

We think those cases have no application. It counts nothing to say the act of Parliament was for the protection of the drawee banker who, in good faith, pays a bill on a forged endorsement. To make that protection effective the drawee must be allowed to charge the drawer's account with the amount of the payment and if the defendant here had paid back the money to this plaintiff which the latter paid for the bill and then, refusing to recognize the payment by the drawee bank in London to an imposter, on a forged endorsement, had sued the latter bank, it would have easily defeated the case under the act of parliament. It seems plain therefore that in legalizing the payment made by the drawee bank it necessarily discharged the drawer. Otherwise he must allow to the drawee

bank the sum it pays and he must also pay back a like sum to plaintiff, in a transaction in which he was not at fault. It must be assumed that plaintiff and defendant, one in asking for, and the other in drawing, a bill on a foreign bank, knew what would constitute a payment in that country; and that the one issued and the other took the bill with a view to the laws of the country where it was payable. Plaintiff purchased and received the bill from defendant with the knowledge that if he allowed it to become lost (carelessly or otherwise) and he should thereby enable some one to impose upon the drawee by a forged endorsement, the loss was his and not defendant's. This is not such a case as those presented by the authorities cited by plaintiff. In those cases payment was refused by the foreign drawee because the drawer had no funds, or if he had funds, for some other reason, but not because the bill had already been paid—it was for some other reason which brought into question whether the endorsement, protest, notice, etc., were governed by the law of the place of contract, or of performance.

Of the English cases referred to above, Vagliano v. Bank of England concerned a question of the interpretation of an act of Parliament as to payments made by banks to "fictitious or nonexisting" payees. The decision was that the payments were not made to that character of payees and therefore the bank did not come within the protective terms of the act. A question not in this case.

The other case (Ogden v. Benas) throws no light on the question in this case. There Ogden, living in London, owed money to a man named Willis at Liverpool and he sent him a check by mail for the amount drawn by his bank in London, payable to him or his order. Willis did not receive it and by some means it fell into the hands of an imposter who endorsed it by forging Willis' name and presenting it to the defendant a banker at Liverpool and getting the money on

it. Defendant then sent the check to his correspondent in London who presented it to the bank upon which it was drawn and received the money which it called for, the latter charging Ogden's account. Ogden then brought suit against the defendant banker at Liverpool for the amount of the check which it had thus received on the forged endorsement and it was held he could recover, on the ground that he had Ogden's money which he received through a forged endorsement. But it was stated by the court that if the London bank which drew the check had been sued by Ogden it would have been protected by the act of Parliament. And that is what we say here. In that case the Liverpool banker was a stranger to the transaction of the check and voluntarily came into the transaction by choosing to cash it on a forged endorsement and then presenting it and receiving the money from the drawee London bank.

Our conclusion is that plaintiff has no cause of action and hence the trial court did right in granting a new trial. The judgment is affirmed. All concur.