PEOPLES TRUST COMPANY OF BINGHAMTON, Plaintiff, *v.* MENZO W. GOODELL and Others, Defendants.

Supreme Court, Broome County, September 10, 1929.

*Newell, Willsey & Shaffer*, for the plaintiff.

*Hinman, Howard & Kattell*, for the defendant Scott.

RHODES, J. The plaintiff in the above-entitled foreclosure action seeks an order directing the sheriff of Broome county to pay over to the receiver appointed in said action certain rents of real estate covered by the mortgage sought to be foreclosed, the amount thus held by the sheriff being $293, seized under a warrant of attachment issued in an action brought against the defendants Menzo W. Goodell and another to recover on a note. In said action on said note the defendants Marmion H. Scott and others are plaintiffs. For convenience, the action on the note will be hereafter referred to as the Scott action. The real estate in question is situated in the State of New York and is owned by the defendant Goodell, now a resident of Florida. Plaintiffs in the Scott action are residents of Illinois. On February 9, 1929, a warrant of attachment was issued in the Scott action, and on April 1, 1929, the sheriff levied under said warrant of attachment upon rents due on said real estate amounting to said sum of $293. On July 8, 1929, judgment in said Scott action was entered against Goodell and others for over $18,000, and the next day an execution was entered thereon and delivered to the sheriff. On April 5, 1929, after the service of the summons on Goodell in the Scott action was completed, the summons, complaint and *lis pendens* in the above foreclosure action were filed in the clerk's office, and on April 20, 1929, the receiver was appointed in said action, and on April 27, 1929, an order of appointment and bond of the receiver were filed. It is stated in plaintiff's brief that a deficiency judgment in said foreclosure action has been entered against Goodell and wife for the sum of $9,000. The facts involved are not disputed.

In the brief for the above-entitled plaintiff, two points are argued as setting forth two grounds why it claims to be entitled to the rents in question. I shall first consider the second point raised, which is in substance that it is against the public policy of this State to permit these funds to be delivered to a non-resident in satisfaction of a claim of a non-resident as against the claim

asserted to the funds by one of its citizens. It is conceded by both sides that there is no decision declaring such rule of public policy as to the State of New York, but the plaintiff relies upon the case of *Disconto Gesellschaft* v. *Umbreit* (208 U. S. 570) as laying down the general rule which should be adopted and followed in this State. Without discussing that case in detail, it is sufficient to say that it is of interest here only in so far as it holds that the matter of public policy in this regard is solely for the State to determine. I think it will be found in all the cases where non-residents have been discriminated against in favor of citizens, that the non-resident was attempting to enforce within the State the laws of another State, or transfers made pursuant thereto, or was seeking for the benefit of non-resident creditors to have funds removed for distribution pursuant to the decree of some tribunal without the State, which is not the situation here. The policy of this State has, I think, been definitely established as contrary to the rule sought by the plaintiff, as I shall presently point out. I should not, therefore, deem it necessary to discuss the proposition were it not for the earnestness with which both sides have argued the matter before me. If the question were still an open one and it were advisable to declare the rule of public policy claimed by the plaintiff, it seems to me such declaration of policy should be made by the Legislature. Such a rule would be legislative in its nature, and I question the propriety of judicial legislation of this character. In any event, if such a rule were to be established by judicial fiat, it seems to me more fitting that it be declared by an appellate court constituted and empowered to speak more authoritatively than a court at Trial and Special Term.

In the case of *Hibernia National Bank* v. *Lacombe* (84 N. Y. 367) it seems to me that the rule controlling here was laid down. There a National bank of New Orleans brought an action in this State upon a draft, and procured an attachment to be issued on funds in the hands of a bank in this State. After the draft in question had been issued, the issuing bank was placed in liquidation under the laws of Louisiana. Commissioners were appointed to take possession of and administer its assets, who were made defendants in the action in this State and claimed title to the attached property. As such defendants, the commissioners insisted that the court had not jurisdiction to issue the attachment or entertain the action. These objections were overruled and the plaintiff had judgment. The Court of Appeals said: " The plaintiff, as we have seen, although a foreign creditor, is rightfully in our courts pursuing *a remedy given by our statutes*. It may enforce that remedy to the same extent and in the same manner and with

the same priority as a citizen. Any other construction would make the permission of the statute a form without benefit; a formality, and not matter of substance; a mere delusion. Once properly in court and accepted as a suitor, neither the law, nor the court administering the law, will admit any distinction between the citizen of its own State and that of another. Before the law and in its tribunals there can be no preference of one over the other. [Citing cases.] The plaintiff, by the process of our courts, has acquired a right, of which no principle of national comity requires us to deprive it." In the case at bar the non-resident defendant Scott is not seeking to enforce the statutes of another State, or a transfer or assignment attempted to be made pursuant to the laws of another State. He has come into our jurisdiction asserting his rights under the laws of our own State. This being so, he is entitled, without discrimination, to the full protection and advantage of our laws and the rights accruing thereunder.

If the above conclusions are correct, then it remains to determine the second point raised by plaintiff which asserts that the lien of the attachment is subordinate to the lien of the mortgage. The levy under the attachment in the Scott action was made before the commencement of the foreclosure action. By such levy Scott acquired a lien on the rents, and, under the law, upon perfecting judgment was entitled to have the rents thus attached applied upon his judgment in the absence of other intervening rights. It is true that the receiver in the foreclosure action, upon qualifying, became entitled to the rents then due and unpaid. (See opinion of Mr. Justice CROPSEY in *New Way Building Co., Inc.*, v. *Taft Building Corporation*, 129 Misc. 170.) I do not think it can be claimed that the receiver would be entitled to rents due and collected by the owner of the property before the appointment of the receiver. (See *Mason* v. *Lenderoth*, 88 App. Div. 38.) The attachment of the rents by the sheriff constituted such a severance thereof from the real property and such a change of possession as to place them beyond the reach of the receiver in foreclosure. It seems to me that when the sheriff attached the rents, the effect was much the same as if the owner of the property had collected them before the appointment of the receiver. Certainly there was nothing irregular or unlawful in the levying of the attachment. It was done pursuant to the express permission of the statute, and the defendant Scott is here taking advantage of the rights thus conferred. Such rights having in good faith been acquired before the appointment of the receiver, I think the defendant Scott is entitled to have the moneys in question applied upon his judgment.

Plaintiff's motion should, therefore, be denied, with costs.