GUSTAV AMSINCK et al., Composing the Firm of G. AMSINCK AND COMPANY, Appellants, v. WILLIAM C. ROGERS et al., Composing the Firm of ROGERS, BROWN AND COMPANY, Respondents.

1. FOREIGN BILL OF EXCHANGE — RIGHTS AND LIABILITIES OF DRAWERS THEREOF GOVERNED BY LAW OF PLACE WHERE BILL IS DRAWN. The rights and obligations of the drawer of a bill of exchange are determined and fixed by the law of the place where he draws it, and he is discharged by failure to protest the same in accordance with the laws of that place, such failure being due to different laws or customs prevailing in the country where the bill is payable. The drawer of such a bill does not contract to pay the money in the foreign place on which it is drawn, but only guarantees its acceptance and payment in that place by the drawee, and agrees in default of such payment, upon due notice, to reimburse the holder in principal and ·damages at the place where he entered into the contract. His contract is regarded as made at the place where the bill is drawn; and as to its form and nature and the obligation and effect thereof it is governed by the law of that place in regard to the payee and any subsequent holder.

2. WHEN INSTRUMENT IS FOREIGN BILL OF EXCHANGE — NEGOTIABLE INSTRUMENTS LAW, §§ 210, 213. A written instrument for the payment of money addressed by a firm doing business in the city of New York to a firm doing business in Vienna, Austria, signed by the firm giving it, requiring the firm to which it is addressed to pay on demand a specified sum in English money to the order of the drawers and charge the same to account of cargo of pig iron shipped to the Vienna firm by a specified steamship, is a foreign bill of exchange, within the definition of the Negotiable Instruments Law (L. 1897, ch. 612, § 210, as amd. by L. 1898, ch. 336,.§ 25, and § 213.)

3. WHEN DRAWER OF FOREIGN BILL OF EXCHANGE RELEASED FROM LIABILITY THEREON, NOTWITHSTANDING THE INSTRUMENT IS A MERE " COMMERCIAL ORDER " FOR MONEY IN COUNTRY WHERE SAME IS PAYABLE. Where such bill of exchange was indorsed by the drawers to a firm of bankers in the city of New York, who sent it to their agent in

Vienna for collection, and such agent failed to demand payment thereof, in accordance with the laws of this state, and upon the refusal of the drawees to pay, failed to protest the same and give notice of such protest to the drawers in the manner required by the laws of this state, the latter are discharged from any liability thereunder, notwithstanding the instrument might have been, under the laws of Austria, a mere "commercial order" for the payment of money of which no protest need be made.

*Amsinck* v. *Rogers*, 103 App. Div. 428, affirmed.

(Argued April 5, 1907; decided October 1, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 9, 1905, affirming a judgment in favor of defendants entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles Oakes* for appellants.   The referee erred in excluding evidence of Austrian laws and decisions of Austrian courts.   All contracts, including negotiable instruments, are as to their validity, nature, interpretation and effect governed by the law of the state or country where they are made and are to be executed.   If, however, they are made in one state or country, but are to be executed in another state or country, then they are governed by the law of the state or country where they are to be performed.   Presentment of negotiable paper must, therefore, be made in accordance with the law of the place of payment, and in accordance with the interpretation as to its character extended to the instrument by such foreign law.   (Westlake on Inter. Law, §§ 110, 163–169; Edwards on Bills, §§ 215, 216, 217; Story on Conf. of Laws, §§ 242, 280; *Everett* v. *Vendryes*, 19 N. Y. 436; *Lee* v. *Selleck*, 33 N. Y. 615; *Dyke* v. *Erie Ry. Co.*, 45 N. Y. 113; *Dickinson* v. *Edwards*, 77 N. Y. 573; *H. Nat. Bank* v. *Lacomb*, 84 N. Y. 367; *U. Nat. Bank* v. *Chapman*, 169 N. Y. 538; *Grand* v. *Livingston*, 4 App. Div. 589; 158 N. Y. 668; *Spies* v. *Nat. City Bank*, 174 N. Y. 222; *Moore* v. *H. Nat. Bank*, 80 App. Div. 67; *Stumpf* v. *Hallahan*, 101 App. Div. 383.)

*Martin Conboy* for respondents. The instrument drawn by the defendants on the 8th day of January, 1901, and indorsed by them to the plaintiffs was a foreign bill of exchange and not a check, as alleged in the complaint, or any other form of instrument. (*Harris* v. *Clark*, 3 N. Y. 93; Savigny's Conf. of Laws, 318, 319; Whart. on Conf. of Laws, § 448.) The right of the defendants as drawers and indorsers of the instrument in question to have the same protested for non-payment and to receive notice of such non-payment and protest are to be judged by the laws of the state of New York, where the instrument was drawn, and not by the laws of the empire of Austria, where the drawee resided. (*Carroll* v. *Upton*, 3 N. Y. 272; *Allen* v. *Merchants' Bank*, 22 Wend. 215; *Aymar* v. *Sheldon*, 12 Wend. 439; *Freese* v. *Brownell*, 35 N. J. L. 285.) By the laws of the state of New York, where the bill of exchange in question was drawn, the defendants have been discharged from any liability, either as drawers or indorsers of the instrument sued upon, by reason of the failure of the plaintiffs to cause the same to be properly protested after non-payment and to give notice thereof to the defendants. (Crawford on Neg. Inst. 83, 95, 127, 128, 130; Baylis on Bills, 256, 261; Norton on Bills [3d ed.], 403.)

HISCOCK, J. Appellants brought this action as holders of a certain instrument for the payment of money drawn by the respondents to their own order upon parties in Austria, and then indorsed and delivered for value to the appellants. The bill of exchange, as we shall for the present denominate it, was not paid by the drawees, and thus far recovery against the drawers has been refused upon the ground that there was no proper protest and notice of protest.

The material facts are not disputed, and the only questions presented for our consideration upon this appeal arise in connection with the rejection by the trial court of certain evidence of Austrian laws and usages offered for the purpose of excusing protest and notice thereof.

Respondents were iron merchants doing business in the city of New York, and appellants were bankers doing business in the same place. The former made a sale of iron to Messrs. A. Herm. Fraenckl Soehne, of Vienna, Austria, and against said sale drew the instrument in question, which reads as follows:

"NEW YORK, *Jan.* 8, 1901.

"Exchange for £2,058 6/8

"On demand of this original cheque (duplicate unpaid) pay to the order of Rogers, Brown & Company, Twenty-two hundred and fifty eight pounds 6/8, payable at rate for bankers cheques on London value received and charge the same to account of pig-iron per S.S. Quarnero.

"ROGERS, BROWN & CO.

"To Mess. A. HERM. FRAENCKL SOEHNE,
       "Ruepgasse, Vienna,
              "Austria.

"No. 75."

This bill was drawn and indorsed and transferred to appellants in New York. There was delay in the shipment of the iron, so that when the consignees and drawees of the bill were notified thereof they refused to carry out their purchase thereof unless an allowance was made, and this condition was complied with by respondents.

January 8, 1901, the bill was forwarded by the appellants to Vienna for collection where it was received January 22nd. It was presented to the drawees on the same day, but the collecting agent was requested by the latter not to present it at that time because there were certain differences then existing between them and the drawers concerning the iron in question which probably would be adjusted in a short time. The agent thereupon withdrew the bill and it was not protested and the respondents were not notified of the presentment and non-payment. January 28, 1901, the bill was again presented by the agent to the drawees and payment again demanded, when practically the same request was made that presentment be withdrawn and the same process repeated, there being no

protest and no notification of presentment and non-payment being given to respondents. February 12, 1901, the bill was again presented and payment formally demanded which was refused, but no protest was made and no notice given to the respondents, except that on February 18 appellants' London agent who had been advised of the presentment on February 12 cabled information thereof and of the refusal to pay and upon the same day appellants by letter advised respondents thereof. February 21, 1901, in response to instructions from New York the bill was presented to the drawees, payment demanded and refused and protest made, and with what we shall assume to have been proper diligence appellants thereafter and on March 11, 1901, mailed to respondents the notice of protest that day received through their agents, the respondents promptly taking the position that they were discharged for lack of proper protest.

As bearing upon the merits of respondents' position, it appears that the steamer carrying the iron arrived at Genoa February 20th, and that at that time the iron in question could have been sold at that place by the respondents at the same price at which it had been sold to the purchasers in Vienna if the bill had been promptly protested. Upon arrival in Austria, the purchasers refused to accept the iron and it was sold for the sum of $5,738.38 for the benefit of whoever might be concerned, leaving an unpaid balance upon the bill of $4,364.45.

It is practically conceded by the learned counsel for the appellants that if the latter's obligation to cause protest and notice of protest of this bill is to be measured by the laws of New York where it was drawn and transferred by respondents, there has been a failure of necessary steps which prevents a recovery. Recognizing this, he sought, as already suggested, to introduce evidence establishing a different and less rigorous obligation upon the part of the appellants. This evidence was to the general effect that in Austria, where the same was payable, the instrument involved was not a bill of exchange nor a check, but a "commercial order" for the

payment of money which was negotiable and which might be presented as often as occasion arose, each presentment being legally good as any other and no protest or notice of dishonor to the drawer being required.

In connection with the rejection of this testimony, which presents the only questions upon this appeal, appellants' counsel has seemed to argue the proposition, broader than the evidence offered, that the rights of the drawer of a bill of exchange to protest and notice are governed by the laws of the place where the bill is payable, upon the assumption that in this case such view would excuse the omissions complained of by respondents.

We shall first discuss this general proposition so urged and, as we believe, shall demonstrate that the weight of authority is that the rights and obligations of the drawer of a bill of exchange are determined and fixed by the law of the place where he draws it, and as in this case transfers it, and that he is discharged by failure to protest the same in accordance with the laws of that place, such failure being due to different laws or customs prevailing in the country where the bill is payable.

It is familar law that the contracts of the different parties to a bill of exchange are independent and carry different obligations. The drawer of such a bill does not contract to pay the money in the foreign place on which it is drawn, but only guarantees its acceptance and payment in that place by the drawee, and agrees, in default of such payment, upon due notice, to reimburse the holder in principal and damages at the place where he entered into the contract.

His contract is regarded as made at the place where the bill is drawn, and as to its form and nature and the obligation and effect thereof is governed by the law of that place in regard to the payee and any subsequent holder. (Story on Bills of Exchange, §§ 131, 154.) While as to certain details, such as the days of grace, the manner of making the protest and the person by whom protest shall be made, the law or custom of the place where it is payable will govern,

the necessity of making a demand and protest and the circumstances under which the same may be required or dispensed with are incidents of the original contract which are governed by the law of the place where the bill is drawn rather than of the place where it is payable. They constitute implied conditions upon which the liability of the drawer is to attach according to the *lex loci contractus.* (Id. §§ 155, 175.)

These principles have been affirmed and enunciated by so many decisions that it would be out of place to attempt a general review of the latter, and citation may be made simply of the following cases outside of this state. (*Powers* v. *Lynch*, 3 Mass. 77, 80; *Potter* v. *Brown*, 5 East, 124; *Price* v. *Page*, 24 Mo. 65; *Hunt* v. *Standart*, 15 Ind. 33, 38; *Raymond* v. *Holmes*, 11 Texas, 54, 59; *Allen* v. *Kemble*, 6 Moore's Privy Council Cases, 314.)

Since, however, it is contended by the learned counsel for the appellants that the views expressed by Story are in direct opposition to the decisions in this state, a somewhat more extended reference will be made to the latter, and with the result, we apprehend, of quite conclusively demonstrating that the current of their authority has been misjudged.

In *Aymar* v. *Sheldon* (12 Wend. 439) a bill of exchange was drawn in the French West Indian islands on a mercantile house in Bordeaux, and was indorsed and transferred in the state of New York, action being there brought upon the bill by the indorsees. The material question arising in the case was whether the steps necessary on the part of the holders of the bill to hold the indorsers upon default of the drawees to accept should be determined by the French law or the law of New York, where the indorsement was made, and it was held that while the payee of the bill was bound to present it for acceptance and payment according to the law of France, as it was drawn and payable in French territories, the indorsee stood upon a new and independent contract, the indorsement being equivalent in effect to the drawing of a bill, and that this indorsement having taken place in New York, the obligation of the indorser and the rights of the indorsee were to

be measured by the laws of that state rather than of the place where the bill was payable, and that this being so it was unnecessary to take certain steps in order to hold the indorser, which would have been necessary under the law of the place where the bill was payable.   The court said : " That the nature and extent of the liabilities of the drawer or endorser are to be determined according to the law of the place where the bill is drawn or endorsement made, has been adjudged both here and in England.   *   *   *   The contract of endorsement was made in this case, and the execution of it contemplated by the parties in this state ; and it is, therefore, to be construed according to the laws of New York.   The defendants below, by it, here engage that the drawees will accept and pay the bill on due presentment, or, in case of their default and notice, that they will pay it.   All the cases which determine that the nature and extent of the obligation of the drawer are to be ascertained and settled according to the law of the place where the bill is drawn are equally applicable to the endorser ; for, in respect to the holder, he is a drawer. *   *   *   Upon the principle that the rights and obligations of the parties are to be determined by the law of the place to which they had reference in making the contract, there are some steps which the holder must take according to the law of the place on which the bill is drawn.   It must be presented for payment when due, having regard to the number of days of grace there, as the drawee is under obligation to pay only according to such calculation ; and it is, therefore, to be presumed that the parties had reference to it.   So, the protest must be according to the same law, which is not only convenient, but grows out of the necessity of the case.   The notice, however, must be given according to the law of the place where the contract of the drawer or endorser, as the case may be, was made, such being an implied condition."

*Allen* v. *Merchants' Bank of New York* (22 Wend. 215) was an action of assumpsit brought to recover the amount of a bill of exchange drawn in New York on a mercantile house in Philadelphia and deposited by the plaintiff with the defend-

ant for collection and which was lost to the plaintiff in conse-
quence of the omission to give notice of non-acceptance to
the indorsers. It was held that the judgment in favor of the
defendant should be reversed; that it did not excuse the
bank from giving notice of the non-acceptance of the bill
because by the law merchant of the place where the bill was
presented, notice of non-acceptance was deemed unnecessary,
but that, on the contrary, as the *lex loci contractus* governed
in such a case, it was the duty of the bank to have caused
proper notice to be given in accordance with the law prevail-
ing where the bill was drawn. In the majority opinion, the
rule laid down by Story and above quoted as to the necessity
of making a demand and protest is quoted with approval.

In *Carroll* v. *Upton* (2 Sandford's Superior Court Reports,
171; affirmed, 3 N. Y. 272) it was held that in the case of a
bill drawn at Washington on a house in New Orleans, the
law of the place where the bill was drawn governed as to the
notice of non-acceptance and of non-payment necessary to be
given in order to charge the drawer, and that evidence of a
different usage prevailing at the place where the drawee
resided and the bill was presented would not be admitted to
control the drawer's liability.

The case of *Artisan's Bank* v. *Park Bank* (41 Barb.
599) was an action to recover from the defendants the amount
of a promissory note deposited with them for collection, on
the ground of a failure to protest and duly notify the indors-
ers of non-payment. The indorsement was made in New
York. The note was payable in Alabama. When the same
became payable it was presented for payment, which was
refused, and the note was not protested and the indorser was
not notified of its non-payment. It was claimed on the trial
that the Alabama statute did not require the indorser of such
a note to be notified of non-payment; also, that the note was
not a negotiable promissory note, and, therefore, the indorsers
were guarantors and not indorsers. The court ruled against
these contentions, however, holding that the indorsement was
a New York contract and governed by the laws of New

York; that by the indorsement the indorsers in effect contracted to pay the note in New York if upon its being duly presented for payment in Alabama payment was refused and they were duly notified of demand of payment and refusal, and that these acts not having been performed the indorsers were discharged.

In *Susquehanna Valley Bank* v. *Loomis* (85 N. Y. 207), Judge Danforth, speaking of the obligations of an indorser of a draft which, as before stated, are regarded as equivalent to those of a drawer, says: "What then was his engagement? As indorser it was, in general terms, to pay the draft to any holder for value whose title was derived through the payee, provided it was duly presented to the drawee, payment refused by it and due notice of the non-payment given to him."

Counsel for appellants especially relies upon two cases to sustain his proposition that the rules laid down by Story have not been adopted in this state.

The first of these cases is that of *Everett* v. *Vendryes* (19 N. Y. 436). This was an action by the indorsee against the drawer of a bill of exchange drawn in New Granada upon a corporation having its office in this state. It was payable to the order of one Jimines, indorsed by him at Cartagena, and was protested for non-acceptance. The answer denied the indorsement of Jimines in general terms. The plaintiffs claimed to be the indorsees according to the legal effect of the bill. The indorsement was not good and sufficient according to the laws of New Granada, but was so according to those of New York. The question, therefore, was whether for the purpose of bringing an action against the drawer of the bill upon non-acceptance by the drawee in New York state the indorsement was to be tested by the laws of New Granada where it was made or by the laws of New York where the bill was payable. It was held that the laws of New York should govern, and Judge Denio, in writing for the court, said: "I have not been able to find any authority for such a case, but I am of opinion that upon the reason of the thing the laws of this State should be held to control.

These laws are to be resorted to in determining the legal meaning and effect and the obligations of the contract. All the cases agree in this. In this case the point to be determined was, whether the plaintiffs were indorsees and entitled to receive the amount of the bill of the drawees. This was to be determined, in the first instance, when the bill was presented for acceptance and payment in New York. The plaintiff's title was written on the bill. The question was, whether it made them indorsees according to the effect of the words of negotiability contained in the bill itself. Those words and the actual indorsement were to be compared, and the legal rules to be employed in making that comparison, were found in the law merchant of the State of New York; and by those rules the indorsement was precisely such a one as the bill contemplated. Besides, it is reasonable to suppose that, in addressing this bill to the drawees in New York, the defendant contemplated that they would understand the words of negotiability according to the law of their own country. * * * When, therefore, he directed the drawees to pay to the order of the payee, he must be intended to contemplate that whatever would be understood in New York to be the payee's order, was the thing which he intended by that expression in the bill." In other words, it was held that the indorsement was made for the purpose of enabling the indorsee to present and collect the note in New York, and that an indorsement which was effective for that purpose under the laws of the State where performance would be sought was sufficient. It does not seem to us that this decision in any way conflicts with those to which we have already referred. It is true that the learned judge commences his opinion with some general observations as to the principles conceived to be applicable in ascertaining the nature and interpretation of a bill of exchange. Such observations, however, constituted nothing more than a *dictum*, and were not sufficient in our opinion to outweigh the authorities to which we have already referred.

The case of *Hibernia National Bank* v. *Lacombe* (84

N. Y. 367) involved consideration of a draft drawn in New Orleans upon New York bankers. The case was disposed of upon the theory that the instrument was a check, which of course was the fact, and the obligations of the drawer of a check, as stated in the opinion, are entirely different from those of the drawer of a bill of exchange. The former undertakes that the drawee will be found at the place where he is described to be and that the sum specified will be paid to the holder when the check is presented, and if not so paid and he is notified he becomes absolutely bound to pay the amount at the place named. In other words, the drawer of a check contracts to pay at the place where the check is payable, instead of, as the drawer of a bill of exchange does, at the place where the instrument is drawn. It is not, therefore, in conflict with our views to hold that the rights of the parties in the case of such a check should be determined by the laws of the place of payment; in other words, the place of performance by the drawer.

Our attention is also called to the case of *Union Nat. Bank of Chicago* v. *Chapman* (169 N. Y. 538), but we do not think that what is there said conflicts with the views we have expressed. In speaking of the general rules governing the construction of a contract it is said : "All matters connected with its performance including presentation, notice, demand, etc., are regulated by the law of the place where the contract by its terms is to be performed."

In the first place, if we have correctly measured the weight of authority, it establishes the proposition that respondents' contract as drawers was to be performed in New York, where the bill was drawn, and, therefore, the rule quoted, if applicable, would lead to the conclusion that demand and protest so far as they were concerned would be governed by the laws of New York.

In the second place, the question involved in the *Chapman* case was not at all akin to that presented here, and we do not believe that the judge there writing intended to approve the rule that as against drawers in New York of a bill of

exchange entire omission of protest might be justified by local customs and usages in a foreign country. We think that he had in mind certain comparatively inconsequential details of the manner and method of making demand and protest, and which, as we have already seen, may be affected by local custom and usage, rather than the entire omission of these important acts. This estimate of what was intended is confirmed by the case of *Scudder* v. *Union Nat. Bank* (91 U. S. 406, 412), which is especially cited as an authority for what was being said.

In the latter case it is written : " The rule is often laid down that the law of the place of performance governs the contract. * * * For the purposes of payment and the incidents of payment this is a sound proposition. Thus, the bill in question is * * * in law a sight draft. Whether a sight draft is payable immediately upon presentation or whether days of grace are allowed, and to what extent, is differently held in different states. The law of Missouri, where this draft is payable, determines that question in the present instance. The time, manner and circumstances of presentation for acceptance or protest, the rate of interest when this is not specified in the bill (citations), are points connected with the payment of the bill, and are also instances to illustrate the meaning of the rule, that the place of performance governs the bill."

Thus far we have assumed that the instrument in suit was a bill of exchange, but we have also considered whether the drawer's rights to protest and notice were governed by the laws of Austria as though such laws would govern such an instrument if otherwise applicable under the principles which have been discussed. As a matter of fact, however, the appellants would not be benefited if we should hold in this connection that the laws of Austria did control in certain cases, for no evidence was received or offered that the drawers of a *bill of exchange* would not be entitled to the same protest and notice under the laws of that country as under those of New York.

Appellants' only excuse for the omission of these steps

rests upon the final proposition that this is not a bill of exchange at all or even a check, but is what is known in Austria as a "commercial order" for the payment of money of which no protest need be made. Support for this proposition it is said would have been found in the rejected evidence which would have established as the Austrian law that a bill of exchange must be so designated in the body of the instrument itself, and that such designation by mere superscription as was found upon the instrument in suit is not sufficient.

Therefore, on a close and final analysis of appellants' argument, it is indispensable that they should convince us that their rejected evidence would have established that this was not to be regarded as a bill of exchange but as a commercial order. We shall assume that under the Austrian law it was a commercial order. On the other hand, there is no doubt, and in fact it is not denied by the learned counsel for the appellants, that it was a bill of exchange under the laws of the state of New York.

The Negotiable Instruments Law (L. 1897, ch. 612, as amended) provides as follows:

"Section 210. Bill of exchange defined.— A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed determinable future time a sum certain in money to order or to bearer."

"Section 213. Inland and foreign bills of exchange. — An inland bill of exchange is a bill which is, or on its face purports to be, both drawn and payable within this state. Any other bill is a foreign bill. Unless the contrary appears on the face of the bill, the holder may treat it as an inland bill."

"Section 321. Check defined.— A check is a bill of exchange drawn on a bank payable on demand."

It sufficiently appears that this bill was drawn upon a business house and was not a check. It was, therefore, a foreign bill of exchange according to the laws of New York.

And so again, we are confronted with the inquiry whether

the rights of these respondents as to the nature of this instrument shall be measured by the laws of New York or by those of Austria. It seems to us clear that it must be the former. The parties had their places of business in New York. The bill was there drawn and negotiated and transferred to the appellants. The contract of the respondents was executed and consummated there, and as we have already seen was to be performed there upon default of the drawees. The law of New York surrounded the parties and the execution of their contract, and in our judgment it would be not only erroneous but highly unreasonable to hold that they contracted with reference to any law other than that of New York, or intended that their contract should be other than that which such law made it — a bill of exchange. The authorities which already have been cited with reference to the contract and rights of the drawer of a bill of exchange are amply sufficient to sustain this view.

Lastly, it is suggested that the decision which we are making will impose much trouble and responsibility upon those who are held for the proper demand and protest of paper in foreign countries where commercial laws and usages differ from our own. We do not see much balance of weight in favor of this argument even if it is to be considered. In a case like this there would be no great difficulty in forwarding with the bill instructions for its proper protest such as were finally given. Some such precautions would not be more onerous than would those otherwise imposed upon a party to a New York bill of ascertaining the law of the foreign country where it was payable in order that he might learn in what manner the rights secured to him where his contract was made would be altered and perhaps materially impaired.

Therefore, we conclude that no error was committed to the prejudice of appellants and that the judgment appealed from should be affirmed, with costs.

CULLEN, Ch. J., O'BRIEN, EDWARD T. BARTLETT, HAIGHT and CHASE, JJ., concur ; VANN, J., dissents.

Judgment affirmed.