YOLANDA DUQUE DE ESTRADA GONZALEZ, Respondent, *v.* INDUSTRIAL BANK (OF CUBA), Appellant, and BANCO NACIONAL DE CUBA, Intervenor-Defendant-Appellant.

First Department, May 15, 1962.

*Leonard B. Boudin* of counsel (*Mary M. Kaufman* and *Henry Winstine* with him on the brief; *Rabinowitz & Boudin*, attorneys), for appellants.

*Mark F. Hughes* of counsel (*Joseph M. Callahan, Kenneth J. Bialkin* and *Laurence G. Bodkin, Jr.,* with him on the brief; *Willkie Farr Gallagher Walton & FitzGibbon,* attorneys), for respondent.

VALENTE, J. Defendant, Industrial Bank of Cuba ("Industrial"), appeals from a judgment entered against it in the sum of $153,824 after trial by the court without a jury. The intervenor-defendant Banco Nacional de Cuba ("Nacional") appeals from the same judgment entered against it for costs only.

Plaintiff is a Cuban national who, at the time the action was commenced, resided in Miami, Florida. Appellant Industrial was a foreign corporation organized under the laws of the

Republic of Cuba and was not amenable to personal service of process in this jurisdiction. While this action was pending — jurisdiction having been obtained by a levy pursuant to a warrant of attachment, upon funds of Industrial in the possession of a bank in New York — Industrial was dissolved by a decree of the Republic of Cuba, and Nacional, designated as Industrial's legal successor, was permitted to intervene and defend the action.

In December, 1958, plaintiff resided with her family in Guanabacoa, Cuba. At the time, her husband had been Mayor of Guanabacoa for about 18 years. On the morning of December 30, 1958, after a family discussion, plaintiff's mother was given a check in the amount of 135,000 pesos drawn to her order by plaintiff's husband on his account in Industrial's branch in Guanabacoa, and the mother surrendered the check at the bank and received a draft drawn on the Colonial Trust Company of New York City to the order of plaintiff in the amount of $132,000. The draft, on its face, required that it be presented within three months.

On January 1, 1959, the then existing Cuban government fell and the Castro regime took over. Plaintiff's husband sought asylum in the Brazilian Embassy where he stayed until March 5, 1959 when he left for the Republic of Brazil. Plaintiff remained in Cuba for several months, during which she was confined to jail for a period of seven days. But, with the assistance of the Brazilian Embassy, she was finally able to leave Cuba and arrived in Florida on April 9, 1959. On April 10, 1959 plaintiff presented the draft for $132,000 to the Pan-American Bank office at Miami, Florida, for collection.

The Colonial Trust Company refused to honor the draft. It had received instructions from Industrial to dishonor the draft.

In May, 1959, an action was commenced herein by the issuance of a warrant of attachment against property of Industrial located in New York County. Industrial, appearing specially, moved to vacate the attachment and to set aside the service of the summons on the ground, among others, that the court lacked jurisdiction over the person of Industrial and over the subject matter of the action. The attachment was sustained (22 Misc 2d 874) and this court affirmed (10 A D 2d 624). However, we expressly refused to adopt the grounds for decision at Special Term, and merely held that " there is enough of an allegation at this stage of the proceedings to support the claim of an overall agreement as distinguished from the sale of a draft to require defendant to be put to answer, at least, and also, perhaps, to its proof ". The Court of Appeals affirmed without opinion (9 N Y 2d 623).

Hence, at the threshold it is necessary to determine whether there was jurisdiction of the subject matter of the action, now that all of the proof is in.

Section 225 of the General Corporation Law provides that an action against a foreign corporation may be maintained by a nonresident only in certain cases. To sustain jurisdiction in this case, plaintiff — a nonresident — relies on subdivision 3 of section 225 which permits suit against a foreign corporation '' where the cause of action arose within the state ''.

Plaintiff alleged, and the trial court found, that the transaction whereby plaintiff obtained the draft was an agreement for the purchase of $132,000 in United States currency from Industrial for delivery in New York, and that the contract was breached in New York when Industrial refused to make delivery of the United States dollars at Colonial Trust Company.

We disagree with that conclusion. As we view the transaction in Cuba it was simply one of the purchase and sale of a foreign draft. When a draft is bought and paid for it becomes an executed transaction. As was said in *Kerr S. S. Co.* v. *Chartered Bank of India* (292 N. Y. 253, 260–261) : '' The rule is authoritatively established and universally recognized that the transfer of a draft in exchange for moneys paid for the delivery of the draft is an executed transaction characterized generally as a 'purchase and sale' of the draft ''. (See, also, *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22, 31; *International Firearms Co.* v. *Kingston Trust Co.*, 6 N Y 2d 406, 409.)

Under such an executed transaction, the drawer of the draft agrees that upon '' due presentment the instrument will be accepted and paid, or both, according to its tenor, and that if it be dishonored * * * he will pay the amount thereof to the holder '' (Negotiable Instruments Law, § 111).*

Thus the executed transaction — the purchase and sale of the draft — gave rise to an obligation on the part of the drawer to reimburse the holder at the place of making the contract, and hence any cause of action for breach of that obligation would arise in Cuba.

The trial court was in error in holding that the cause of action arose in New York because that was the place for presentment of the draft — the place of performance of the contract. The

---

* Section 3–413 of the Uniform Commercial Code (L. 1962, ch. 553, effective September 27, 1964) which defines the contract of the maker, drawer and acceptor of a negotiable instrument provides (subd. 2) : " The drawer engages that upon dishonor of the draft and any necessary notice of dishonor or protest he will pay the amount of the draft to the holder or to any indorser who takes it up ".

drawer of a draft does not contract to pay at the place on which the draft is drawn but only guarantees acceptance and payment at that place, and engages only, in default of payment, to reimburse the holder at the place where the draft was made. (See 8 Am. Jur., Bills and Notes, § 522, p. 237; *Amsinck* v. *Rogers,* 189 N. Y. 252, 257; *Swift & Co.* v. *Bankers Trust Co.,* 280 N. Y. 135.)

The trial court relied on *Hibernia Nat. Bank* v. *Lacombe* (84 N. Y. 367) and *Riddle* v. *Bank of Montreal* (145 App. Div. 207) as establishing that a cause of action arises against the drawer of a draft at the place of its dishonor. *Hibernia* was distinguished in *Amsinck* v. *Rogers* (*supra,* pp. 262–263) on the ground that it involved a check and not a bill of exchange. *Riddle* also involved a check. However in *Swift & Co.* v. *Bankers Trust Co.* (*supra*) the court specifically eliminated the distinction between checks and drafts and adopted the rule in *Amsinck* v. *Rogers* (*supra*) to cover both types of instruments. Thus, the cases relied on by the trial court no longer represent the rule in this State, and it is now unquestionable that the obligation of the drawer of a check or draft is governed by the law of the place of business of the drawer, and the cause of action, in the event of dishonor, arises in that place. (See, also, *Bank of Nova Scotia* v. *San Miguel,* 196 F. 2d 950, 956.)

Since the cause of action against Industrial arose in Cuba there was no venue under the New York statute in the courts of this State over the subject matter of this suit brought by a nonresident against a foreign corporation not doing business in this State. The complaint should therefore have been dismissed.

Since the judgment should be reversed and the complaint dismissed, the appeals by defendants from the orders denying their motion for a new trial and to strike the cause from the calendar are dismissed as academic.

The judgment should be reversed on the law and the facts and the complaint dismissed, with costs to appellants.

BOTEIN, P. J., BREITEL, RABIN and BERGAN, JJ., concur.

Judgment unanimously reversed on the law and on the facts and the complaint dismissed, with costs to appellants. Settle order on notice.

Appeals from orders entered on October 26, 1961 and on January 15, 1962 unanimously dismissed, as academic, in view of the decision of this court decided herein.