**NATIONAL AMERICAN
CORPORATION,
Plaintiff,**

v.

**FEDERAL REPUBLIC OF NIGERIA and
Central Bank of Nigeria, Defendants.**

No. 76 Civ. 2745 (GLG).

United States District Court,
S. D. New York.

Feb. 8, 1977.

Eaton, Van Winkle, Greenspoon & Grutman, New York City, for plaintiff by Norman Roy Grutman, Jeffrey H. Daichman, Richard A. Rubin, New York City, of counsel.

Kissam & Halpin, New York City, for defendants by James G. Simms, New York City, of counsel.

Lewis S. Sandler, New York City, for applicants for intervention.

## OPINION

GOETTEL, District Judge.

National American Corp. ("NAC"), the plaintiff in this action, sued the defendants, Federal Republic of Nigeria (Nigeria) and Central Bank of Nigeria ("CBN"), to recover damages for the alleged breach of NAC's contract to supply cement. They also sue upon a letter of credit issued by CBN having the plaintiff as its beneficiary. Two other corporations, Nikkei International, Inc. (Nikkei) and Chenax Majesty (Chenax) which also claim to have contracted to supply cement to Nigeria and to have been beneficiaries of a CBN letter of credit, have moved for permissive intervention under Fed.R.Civ.Proc. 24(b). For the reasons stated in this opinion, leave to intervene is hereby denied.

Several years ago, Nigeria mounted a massive program for the purchase of cement, involving approximately sixty-seven primary suppliers. The court has been told that 500 ships converged on Lagos (Nigeria's principal port) which had facilities for unloading only a couple of ships a week. As unpaid claims for demurrage began to exceed the value of many shipments, litigation resulted. There is currently pending in this court at least one other case arising from these contracts, while still another was settled and discontinued. See this court's decision in the related case of *National Bank & Trust Co. v. J. L. M. Int'l Inc.*, 421 F.Supp. 1269 (S.D.N.Y.1976).

A brief description of the history of this litigation is necessary to understand the grounds for the denial of the proposed intervenors' motion. In 1975, NAC entered into a written agreement with Nigeria in which it contracted to supply cement. Payment of the purchase price, which exceeded $14,000,000, was guaranteed by an irrevocable letter of credit issued in favor of plaintiff by CBN under which payments were to be made by Morgan Guaranty Trust Company of New York (Morgan Guaranty) upon presentation of sight drafts and other documents. Payments were to be made through the Bank of America in New York City. Thereafter, Morgan Guaranty advised plaintiff that, upon defendant's instructions, it would refuse payment unless the documents required by the letter of credit also were accompanied by a CBN certificate that plaintiff had given advance notice of sailing and the defendants had given clearance for the departure of each ship. Plaintiff regards this unilateral amendment to the documentation requirements as an anticipatory breach of the letter of credit agreement. Settlement discussions were held resulting in a "discharge agreement." Thereafter, plaintiff claimed the defendants breached the settlement agreement and defendants claimed it was obtained by plaintiff's fraudulent misrepresentation.

Plaintiff commenced this action based upon the breach of the contract of sale and the letter of credit agreement seeking to recover the unpaid balance of the purchase price and demurrage charges. At the commencement of the action, plaintiff applied for and was granted an attachment of defendants' funds held by Morgan Guaranty. A subsequent motion to prove the grounds of the attachment was granted upon a finding by Judge Weinfeld that plaintiff had established a *prima facie* case. *National American Corp. v. Federal Rep. of Nigeria*, 420 F.Supp. 954 (S.D.N.Y.1976) (Weinfeld, J.).

Chenax and Nikkei claim a relationship to the defendants sufficiently similar to that of NAC to justify their intervention in this action. Chenax alleges in its proposed complaint that it contracted with Nigeria to supply 240,000 metric tons of cement with payment guaranteed by an irrevocable letter of credit to be paid by Morgan Guaranty upon presentation of the requisite documentation. Payment was to be made through a German bank, Schroeder, Munchmeyer, Hengst & Co. Chenax also alleges that it contracted to purchase cement from third

parties in order to fulfill its commitments to Nigeria. Nikkei alleges a similar plight in that it contracted to supply 240,000 metric tons of cement with payment guaranteed by an irrevocable letter of credit, payable by Morgan Guaranty through First National City Bank in New York City. Both of the proposed intervenors, like NAC, claim the defendants placed further conditions upon payment of the letters of credit and that this change constituted an anticipatory breach of the letter of credit. Both seek to recover their lost profits and consequential damages.

The applicants seek permissive intervention under Rule 24(b).[1] Both plaintiff and defendant oppose their intervention on the grounds that (1) the applicants have failed to establish independent grounds of jurisdiction, (2) the claims have no common questions of law or fact, and (3) granting the motion will prejudice the existing parties through the delay caused by injecting new issues which would add to confusion at trial.

### Independent Jurisdictional Grounds

The parties to the action oppose permissive intervention on the ground that the applicants have failed to establish a separate basis of personal jurisdiction over the defendants. Both the instant plaintiff and the applicants for intervention rest their claim of federal subject matter jurisdiction upon diversity of citizenship under 28 U.S.C. § 1332(b). The plaintiff, however, has sidestepped the need for personal jurisdiction by successfully attaching the defendants' funds in a New York bank. The applicants, in contrast, have not attempted to establish a similar quasi-in-rem basis and, therefore, run headlong into the issue *in personam* jurisdiction.[2]

As a general rule, an applicant for permissive intervention must establish an independent ground of jurisdiction. *Reedsburg Bank v. Apollo*, 508 F.2d 995 (7th Cir. 1975); 3B J. Moore, Fed. Practice ¶ 24.18 (2d ed. 1976). Where, as here, the court has acquired jurisdiction over only a *res* and the proposed intervenors assert personal claims without having an interest in that *res*, the court must be concerned with the presence of personal jurisdiction. As the Seventh Circuit framed the issue:

"In an in personam action . . . when the only basis for intervention is a common question of law or fact, there is no compelling reason to permit the litigation of a claim or a defense that could not have been asserted had the intervenor been an original plaintiff or defendant."

*Reedsburg Bank v. Apollo, supra* at 1000. The issue in a diversity action then becomes whether there exists a state predicate of *in personam* jurisdiction. As the Second Circuit stated in *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963):

"There . . . exists an overwhelming consensus that the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee."

In applying state law, the federal court is guided by the state courts' interpretation of their jurisdictional statutes. *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 431–32 (2d Cir. 1971). Consonant with this approach, the Federal Rules of Civil Procedure permit service upon a non-domiciliary where the forum state would permit it.[3] Fed.R.Civ.

---

1. Although the notice of motion states that intervention is sought under Fed.R.Civ.Proc. 24, the accompanying memorandum of law apparently limits the grounds to permissive intervention under Rule 24(b).

2. Although the attorney for Chenax and Nikkei intimates in his affidavit that an attachment might be "warranted" and suggests that the

minimum bond ($250) permitted by N.Y.C.P. L.R. § 6212(b) might be appropriate, he has taken no steps to pursue this remedy. Sandler Affidavit at 4.

3. While service of the application for intervention is effected pursuant to Fed.R.Civ.Proc. 5, this Rule does not purport to confer *in personam* jurisdiction. It is clear that, under the

Proc. 4(d)(7) and 4(e); *Masonite Corp. v. Hellenic Lines, Ltd.*, 412 F.Supp. 434, 437 (S.D.N.Y.1976).

The applicants rest their omnibus jurisdictional claim upon (1) the "minimum contacts" theory formulated by such cases as *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); (2) their claim that CBN is doing business in New York, N.Y.C.P.L.R. § 301 (McKinney 1972); and (3) New York's long-arm statute under the alternate theories that the defendants or their agents transact business here or that the defendants' acts amounted to a tort causing injury within this state, N.Y.C.P.L.R. § 302(a)(1) and (3) (McKinney 1972).

■ The first of these grounds is disposed of easily. As the quoted portion of the Second Circuit's opinion in *Arrowsmith v. United Press Int'l, supra*, indicates, state standards of jurisdiction apply in a federal diversity case. New York has thus far declined to expand its jurisdiction to the constitutionally permissible limits of *International Shoe*. *Galgay v. Bulletin Co.*, 504 F.2d 1062, 1066 (2d Cir. 1974); *A. Millner Co. v. Noudar, Lda.*, 24 A.D.2d 326, 329, 266 N.Y.S.2d 289, 293 (1st Dep't 1966).

■ The second theory of jurisdiction is that CBN is doing business in New York. This claim invokes the traditional basis that a corporation is present within the state when it does business "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917). Initially, it should be noted that Chenax and Nikkei bear the burden of proving the "definitive evidentiary facts"

underlying their claim of jurisdiction. *Security Nat. Bank v. Ubex Corp.*, 404 F.Supp. 471, 475 n.9 (S.D.N.Y.1975). The "definitive" facts relating to defendants' business activity relied upon by the proposed intervenors are: (1) conclusory statements that CBN does business here; (2) a characterization of Morgan Guaranty as CBN's agent; and (3) the maintenance by CBN of bank accounts at Morgan Guaranty.

■ Few of the traditional criteria of doing business have been demonstrated. Concededly, CBN does not have an office here nor are its employees present within the state. The isolated act of maintaining bank accounts here has been held not to constitute doing business. *Fremay, Inc. v. Modern Plastic Mach. Corp.*, 15 A.D.2d 235, 222 N.Y.S.2d 694 (1st Dep't 1961). The applicants denominate Morgan Guaranty as CBN's agent. New York courts have recognized a foreign corporation's presence when its agent systematically performs services within the state which would have subjected the principal to jurisdiction had they been performed by it. *Frummer v. Hilton Hotels Int'l Inc.*, 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851 (1967); McLaughlin, Practice Commentary C301:3 (McKinney 1972). Clearly, Morgan Guaranty is an entity independent of CBN. While the agency theory has been interpreted, in some instances, to include the acts of independent contractors, *Gelfand v. Tanner Motor Tours, Ltd.*, 339 F.2d 317 (2d Cir. 1964), the nature of Morgan Guaranty's actions on behalf of CBN would not appear to have that symbiotic quality which would subject CBN to jurisdiction here under the traditional "doing business" standards. N.Y.C.P.L.R. § 301 (McKinney 1972); *Frummer v. Hilton Hotels Int'l, Inc., supra.*[4] The rela-

applicable New York standards, where the court's jurisdiction is premised upon an attachment, the defendant may make a limited appearance without subjecting himself to the court's personal jurisdiction. N.Y.C.P.L.R. § 320(c) (McKinney 1972), McLaughlin, Practice Commentary C320:6 (McKinney 1972). It would be incongruous to allow the defendants' limited appearance in this action to be transformed by the device of intervention into a

waiver of their objections to lack of *in personam* jurisdiction.

4. In *Gonzalez v. Industrial Bank*, 16 A.D.2d 347, 228 N.Y.S.2d 81 (1st Dep't), reversed on other grounds, 12 N.Y.2d 33, 234 N.Y.S.2d 210, 186 N.E.2d 410 (1962), a case involving a relationship between two banks similar to that presented here, the court notes, in dictum, that the defendant bank would not have been amenable to *in personam* jurisdiction.

tionship of the two correspondent banks will be discussed in greater detail with reference to the applicants' claim of long-arm jurisdiction.

 Although the level of activity fails to have the continuity associated with doing business, casual or sporadic acts within the state may form the basis of long-arm jurisdiction under N.Y.C.P.L.R. § 302(a)(1), provided the cause of action arises from the acts. The applicants claim that both defendants "transact business within the state" so as to bring them within the reach of the statute. The facts supporting their claim are (1) the maintenance of bank accounts at Morgan Guaranty; (2) the role of Morgan Guaranty as an advising bank in the letter of credit transaction; and (3) with regard to Nikkei, the choice of First National City Bank in New York as the site of payment.[5]

The courts of New York have examined activity similar to that present here and have found it insufficient to support long-arm jurisdiction. In *Wirth v. Prenyl*, 29 A.D.2d 373, 288 N.Y.S.2d 377 (1st Dep't 1968) the defendant Argentinian corporation contracted with the plaintiff, a New York corporation, for the purchase of machinery to be shipped from outside the state. Payment was to be effected through a series of promissory notes, executed in Argentina, and forwarded to a New York bank for payment here. Upon maturity, payment was refused. The court, emphasizing that plaintiff's convenience governed the choice of New York as the place of payment, stated:

"The activity in which the defendants engaged in this jurisdiction . . . was not of that special quality sufficient to render them subject to personal jurisdiction in this State. . . . Commer-

cial benefit did not accrue to the defendants by fixing the place of payment in New York, nor was the protection of our laws bargained for. . . . We conclude that the defendants did not submit to jurisdiction under CPLR 302(a)(1) by the nature of their activity in New York and that maintenance of the suit here violates constitutional standards of fair play and substantial justice."

*Id.* at 375, 288 N.Y.S.2d 377 at 379. *See also, Hubbard, Westervelt & Mottelay v. Harsh Bld'g Co.*, 28 A.D.2d 295, 284 N.Y. S.2d 879 (1st Dep't 1967).[6] In this case, the defendants acceded to Nikkei's request that payment be made in New York and, in the case of Chenax, similarly complied by arranging for payment in Hamburg, Germany.[7]

 The applicants also seek to ground jurisdiction in the relationship between CBN and Morgan Guaranty as correspondent banks. In this regard, they place primary reliance upon two cases, *J. Zeevi & Sons, Ltd. v. Grindlays Bank*, 37 N.Y.2d 220, 371 N.Y.S.2d 892, 333 N.E.2d 168, *cert. denied*, 423 U.S. 866, 96 S.Ct. 126, 46 L.Ed.2d 95 (1975); and *Amigo Foods Corp. v. Marine Midland Bank*, 39 N.Y.2d 391, 384 N.Y. S.2d 124 (1976).

In the first case, a Ugandan bank issued a letter of credit in favor of the plaintiff Israeli corporation. A New York bank independently guaranteed reimbursement to any negotiating bank honoring drafts drawn upon the credit. Upon dishonor, plaintiff commenced an action against both banks and attached the foreign bank's deposits in New York. The Court of Appeals held that the cause of action for wrongful dishonor arose here, a finding necessary under N.Y.B.C.L. § 1314 (McKinney 1963)

---

**5.** The Chenax cement contract discloses that payment was to be made through a German bank. Chenax Ex. A annexed to Intervenors' Notice of Motion.

**6.** Although the court in *G. Benedict Corp. v. Epstein*, 47 Misc.2d 316, 262 N.Y.S.2d 726 (Sup.Ct., Albany Cty. 1965) reaches a result inconsistent with the cases cited in this opinion, the court in *Hubbard, Westervelt & Motte-*

lay v. Harsh Bld'g Co., 28 A.D.2d 295, 284 N.Y.S.2d 879 (1st Dep't 1967) indicated that the rationale of the earlier lower court case had not prevailed.

**7.** The court in *Wirth* apparently did not attach importance to the fact that the site of payment may have been an element of the bargain struck between the parties.

which bars suits between non-domiciliaries unless one of its conditions is met. The court applied New York law because New York, as a financial capital, had a direct interest in the inviolability of international letter of credit transactions.

Although the independent nature of the New York bank's undertaking in *J. Zeevi & Sons* renders that case factually dissimilar, the primary difference lies in its legal thrust. Personal jurisdiction was not in issue; therefore, the holding revolves around the bar to subject matter jurisdiction created by Section 1314. That statute outlines areas in which the courts will retain jurisdiction of suits between non-domiciliaries otherwise properly brought. It has nothing to do with the constitutional limits on the power of the courts to exercise jurisdiction over the person of a defendant. *Simonson v. International Bank*, 14 N.Y.2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964). The applicants further urge this court to assert jurisdiction on the basis that New York's position as a financial capital creates a state interest which in turn justifies subjecting these defendants to its jurisdiction. The argument is untenable because the status of a state as the most "interested" or "convenient" forum, while relevant in the area of conflicts of law, cannot dispense with the need for a basis of *in personam* jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 254, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

In *Amigo Foods Corp. v. Marine Midland Bank, supra*, the court reversed the dismissal of a complaint based on dishonor of a letter of credit for lack of *in personam* jurisdiction without permitting discovery directed to the jurisdictional issue. The plaintiff had claimed an agency relationship existed in fact between a New York bank and its out of state correspondent bank. The court held that their relationship as correspondent banks did not support long-arm jurisdiction as a matter of law but, since plaintiff's claim was not frivolous, discovery should have been allowed.

Nikkei and Chenax claim that the circumstances of the letter of credit transaction and the correspondence among the banks establish the presence of sufficient contact with New York to support long-arm jurisdiction. This argument is rebutted by the letters of credit and the related documents submitted in support of their motion for intervention. The confirmation of the Nikkei letter of credit from CBN to Morgan Guaranty expressly states that the latter was to "advise beneficiary (without adding your confirmation) of our authority given to you to pay on sight of documents." [8] The advice of the Chenax letter of credit from Morgan Guaranty contains the similar statement that "This letter is solely an advice and conveys no engagement by us." [9] The correspondence among the banks and the beneficiaries is replete with references that Morgan Guaranty did not independently undertake to pay the letter of credit.[10]

The nature of the relationship between Morgan Guaranty and CBN appears to be, therefore, that of an advising rather than a confirming bank. Uniform Customs and Practice for Commercial Documentary Credits (U.C.P.) art. 3. In light of the limited nature of its participation, *i. e.*, advising the beneficiary of the issuance of the credit and its authorization to pay upon the presentation of appropriate documents, its transactions in this state on behalf of the issuing bank cannot form a basis for long-arm jurisdiction under N.Y.C.P.L.R. § 302(a)(1).

▮▮▮ The intervenors last asserted ground for jurisdiction rests upon N.Y.C.P.L.R. § 302(a)(3) which establishes long-arm jurisdiction where a defendant commits a tort without the state which gives rise to injury within the state. The applicants

---

8. Ozawa Ex. B to Sandler Affidavit.

9. Akuba Ex. B to Sandler Affidavit.

10. See correspondence attached as Ozawa Ex. C to Sandler Affidavit: July 23, 1975 letter from Morgan Guaranty to Nikkei; July 25, 1975 letter from Nikkei to Morgan Guaranty recognized the lack of Morgan Guaranty's engagement on the letter of credit; October 22, 1975 letter from Morgan Guaranty to Nikkei.

characterize CBN's instructions to Morgan Guaranty to refuse payment as tortious interference with contract. As an advising bank, Morgan Guaranty had no obligation, beyond transmitting accurate information, to the beneficiaries of the letter of credit. U.C.P. art. 12; N.Y.U.C.C. § 5–107(1) (McKinney 1962). Consequently, there existed no contractual relationship with which to interfere. Moreover, in *Amigo Foods Corp. v. Marine Midland Bank, supra,* the court found no merit in the plaintiff's contention that the wrongful dishonor of a letter of credit constituted a tortious act so as to form a basis for long-arm jurisdiction under Section 302(a)(3).

In conclusion, therefore, the court finds that the proposed intervenors' failure to demonstrate a basis of personal jurisdiction is a sufficient ground for denying permissive intervention. However, even if jurisdiction were established, there are other factors which militate against the court's exercising its discretion to permit intervention in this case.

*Discretionary Grounds Under Rule 24(b)*

■ While Rule 24(b) allows intervention where there exists a common question of law or fact, it also states that the possibility of delay or prejudice to the existing parties is a relevant consideration. Courts may deny intervention in cases presenting common factual or legal issues if "collateral or extrinsic issues are apt to be injected by the intervenor." *Walter E. Heller & Co. v. Cox,* 379 F.Supp. 299, 310 (S.D.N.Y.1974).

■ Although the contracts of plaintiff and the proposed intervenors all involve supplying cement to Nigeria, they differ in several material aspects. The most important of these is the choice of law provisions. The NAC contract provides that it will be governed by the "Laws of New York City," the Nikkei contract by the "Laws of the U.S.A." and the Chenax contract by the "Laws of Switzerland." The initial inquiry, therefore, will be to discover which law

applies, to determine what that law is and then to resolve whether any party's rights or obligations change by applying that body of law. There are other, less significant differences.[11] The difference in the choice of law provisions could inject complex legal issues, collateral to this case, of sufficient magnitude to weigh against intervention.

Furthermore, the plaintiff has consistently followed a course of pursuing its rights with alacrity: first, by attaching defendants' funds which necessitated posting a substantial bond; second, by successfully opposing defendants' proposed consolidation of this action with a related case involving a similar cement purchase, *National Bank and Trust Co. v. J. L. M. Int'l Inc.,* 421 F.Supp. 1269 (S.D.N.Y.1976), and third, by recently moving for summary judgment. As an alternative to summary judgment plaintiff seeks an expedited trial. The motion has been argued and trial in a month requested. Moreover, plaintiff claims its diligence is directly related to its financial condition which, it claims, has grown precarious due to defendants' actions and threatens to worsen if trial is delayed. The statement of Judge Wyzanski is no less true today, in that:

> "Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair."

*Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.,* 51 F.Supp. 972, 973 (D.Mass.1943).

This case has a greater potential for becoming a Donnybrook than most. While the proposed intervenors state that only seven concerns were beneficiaries of a CBN credit payable through a New York bank, an unknown number may have involved Morgan Guaranty in the role of an advising bank—a role urged by the applicants as an appropriate basis for their intervention.

---

11. Other distinctions among the contracts and the letters of credit include the assignability of the letter of credit, the Nigerian representative for the plaintiff and intervenors, and the type of cement to be delivered.

Finally, while the opposition of the existing parties to the proposed intervention is not conclusive, it is, nevertheless, another factor to be considered. *Commonwealth Edison Co. v. Allis Chalmer Mfg. Co.*, 207 F.Supp. 252 (N.D.Ill.1962), *aff'd*, 315 F.2d 564 (7th Cir. 1963).

In sum, the court finds little benefit to counterbalance the probable delay. *In re Penn Central Commercial Paper Litigation*, 62 F.R.D. 341 (S.D.N.Y.1974), *aff'd sub nom. Shulman v. Goldman, Sachs & Co.*, 515 F.2d 505 (2d Cir. 1975). While the contracts all relate to the purchase of cement, their legal and factual disparity, the necessity of additional proof due to the separate documentation, and the potential prejudice to the existing parties combine to cause the court, in its discretion, to deny intervention under Rule 24(b).

SO ORDERED.